1  **James M. Barrett, SBN 49126**
   Lawyer
2  150 E. Cotati Avenue
   Cotati, California 94931
3  Telephone:    (707) 795-1510
   Fax:          (707) 795-3364
4
   **Marvin Pederson, SBN 85258**
5  **Attorney at Law**
   1160 N. Dutton Avenue, Suite 150
6  Santa Rosa, CA 95401
   Telephone:    (707) 544-9444
7  Fax:          (707) 544-5829

8  Attorney for Plaintiff
   HARRY DONALD FISHER
9

10

RECEIVED

LEGAL DEPARTMENT

ENDORSED
FILED

APR 8 - 2008

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

11                **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA**

12

13  HARRY DONALD FISHER,                    CASE NO. SCV 242671
                                            (Unlimited Civil)
14         Plaintiff,

15         vs.                              **COMPLAINT FOR**
                                            1.   Violation of Code of Federal
16  DOWNEY SAVINGS AND LOAN                      Regulations § 226.34(a)(4);
    ASSOCIATION, a California corporation;  2.   Elder Abuse;
17  EQUITY ONE FINANCIAL CORP., a           3.   Intentional Misrepresentation;
    California corporation, ERIK MEYERS,    4.   Violations of Financial Code § 50701;
18  individually, FCI LENDER SERVICES,      5.   Fraud;
    INC., a California corporation, and DOES 1  6.   Violations of Business and Professions
19  through 20, inclusive,                       Code §17500;
                                            7.   Violations of Business and Professions
20         Defendants.                           Code § 17200;
                                            8.   Truth in Lending Act Violations;
21  _____/      9.   Conspiracy;
                                            10.  Injunctive Relief.
22                                          Case Assigned to _____

23         Plaintiff HARRY DONALD FISHER hereby alleges as follows:

24  ////

25  ////

26                                  1

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

## THE PARTIES

1.    Plaintiff HARRY DONALD FISHER (hereinafter "plaintiff") is and at all times relevant hereto was, a resident of the County of Sonoma, State of California, residing at 2335 Marsh Court, Santa Rosa, California 95403 (hereinafter the "Property" or "subject property"). Don, DOB 04/25/34, is and at all times relevant hereto was, well over the age of sixty-five (65).

2.    Defendant DOWNEY SAVINGS AND LOAN ASSOCIATION (hereinafter "DOWNEY SAVINGS") is and at all times relevant hereto was, a corporation licensed to do business in the State of California (License No. C0335591). DOWNEY SAVINGS' registered business address is and at all times relevant hereto was, 3501 Jamboree Road, Newport Beach, CA 92660. DOWNEY SAVINGS' agent for service of process in California is Jon A. MacDonald, 3501 Jamboree Road, Newport Beach, CA 92660. DOWNING SAVINGS is a creditor as defined by the Truth in Lending Act (hereinafter "TILA"). DOWNEY SAVINGS is a business engaged in residential mortgage lending.

3.    Defendant EQUITY ONE FINANCIAL CORP. (hereinafter "EQUITY ONE") is and at all times relevant hereto was, a corporation licensed to do business in the State of California (License No. C2613159). EQUITY ONE's registered business address is and at all times relevant hereto was, 26707 Agoura Road, Suite 204, Calabasas, CA 91302. EQUITY ONE's agent for service of process in California is Erik Meyers, 26707 Agoura Road, Suite 204, Calabasas, CA 91302. EQUITY ONE is and at all times relevant hereto was, a business engaging in brokering residential mortgages, licensed by the California Department of Real Estate (License No. 01441868).

4.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 20, inclusive, and therefore sues said defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

1  defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's

2  damages as herein alleged were caused in whole or in part by their conduct.

3       5.     Each of the fictitiously named defendants is in breach of some contract or is

4  tortiously or otherwise legally responsible in some manner for the occurrences alleged in this

5  Complaint and for plaintiff's damages.  Further, plaintiff alleges that defendants EQUITY ONE

6  and ERIK MEYERS were acting as defendant DOWNEY SAVINGS' agents with respect to

7  their dealings with plaintiff as described in this case.

8       6.     Plaintiff is informed and believes and thereon alleges that at all relevant times,

9  each of the defendants, including Does 1 through 20, inclusive, was the agent or employee of each

10  of the remaining defendants and, in doing the things alleged, was acting within the scope of that

11  agency or employment.

12  <u>GENERAL ALLEGATIONS</u>

13       7.     On and about March 2005, plaintiff Harry Donald Fisher, a single man, was 71

14  years of age and lived alone in the residential property that is the subject of this action.

15       8.     Plaintiff was retired and unemployed, depending on retirement benefits and Social

16  Security payments as the sole source of his monthly income.

17       9.     Plaintiff has a high school education, but no higher education beyond that.

18       10.    As a result of the following facts, plaintiff, at all times relevant hereto, was in

19  poor and compromised physical and emotional health:

20       (a)    On September 22, 2004, plaintiff underwent a complete replacement of his

21  right knee.

22       (b)    On November 26, 2004, while convalescing from that right knee

23  replacement, plaintiff slipped and fell in a movie theater and suffered a displaced fracture of his

24  right femur.

25       (c)    Plaintiff suffers from long-standing diabetes;

26

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

1     (d) Plaintiff suffers from long-standing hypertension;

2     (e) Plaintiff suffers from morbid obesity.

3   11. On or about March 2005, plaintiff received an unsolicited, unexpected "cold call"

4 telephone solicitation at his home from a representative and agent of defendant EQUITY ONE, a

5 licensed mortgage broker.  In speaking together, on this first occasion, the EQUITY ONE

6 representative told plaintiff that he could offer a 1% mortgage on plaintiff's residential property

7 (his principal place of residence), reduce plaintiff's monthly mortgage payments dramatically,

8 and allow plaintiff to receive several thousand dollars of equity out of the house for his personal

9 use.

10   12. From and after March 2005, various discussions between and among the parties

11 occurred, during which defendants EQUITY ONE and ERIK MEYERS took advantage of

12 plaintiff's limited education, business naivete, and physical and emotional health, all the while

13 knowingly misrepresenting that it would be to plaintiff's financial advantage to refinance his

14 existing mortgage on his principal place of residence, under terms grossly to plaintiff's

15 disadvantage as further described herein.

16   13. Plaintiff informed defendant EQUITY ONE's representative that his income was

17 derived from two sources:  (1) Retirement benefits from PG&E in the monthly amount of

18 $1,324.94, and (2) Social Security benefits in the monthly amount of $1,054.00, for a total fixed

19 monthly income of $2,379.94.  He mailed copies of the Statement of Annuity Payment from

20 PG&E, and a statement of benefits from Social Security to defendant EQUITY ONE's

21 representative.

22   14. On or about May 25, 2005, plaintiff was on vacation in southern California with

23 his daughter and grandchildren, staying at the Disneyland Hotel.  Plaintiff received a call from

24 the EQUITY ONE representative while in southern California, who told plaintiff that he had

25 arranged for someone to bring over the loan documents to plaintiff's hotel for review and

26               4

1  signature.  Plaintiff then received a message in his hotel room that someone was waiting for

2  plaintiff in the hotel's lobby.  Upon descending to the lobby, plaintiff was met by a woman who

3  represented that she was there on behalf of defendant EQUITY ONE.  The woman had a large

4  stack of papers for plaintiff to sign, pertaining to a loan and mortgage from defendant DOWNEY

5  SAVINGS.

6      15.    The EQUITY ONE representative announced that she was a notary public, and

7  plaintiff, upon her instruction, signed and initialed various pages of the loan documents, as well

8  as her notary book.  At the urging of the notary public, plaintiff glanced through but did not

9  thoroughly read the lengthy loan documents, based on the representative's assurance that the loan

10  documents accurately reflected all of the information plaintiff had previously provided to the

11  original EQUITY ONE representative he had been speaking with, and that the loan documents

12  did not contain any information other than what had previously been supplied.

13      16.    At the time of the signing of the subject loan documents (referenced in Paragraph

14  15, above), plaintiff was still taking heavy doses of narcotic pain medication and was unable to

15  walk more than 50 feet without use of a front-wheeled walker.  Plaintiff's primary mode of

16  ambulation was via use of a wheelchair.

17      17.    An unsigned copy of the loan documents was simultaneously provided to plaintiff

18  by the EQUITY ONE representative, after she had collected the signatures she needed on the

19  original set of loan documents, with the assurance that they were a true copy of the documents

20  plaintiff had just signed, and contained all of the same information, specifically including the

21  sum and composition of his fixed monthly income of $2,379.94, consisting of monthly retirement

22  income from PG&E of $1,324.94, and monthly Social Security benefits of $1,054.00.

23      18.    Contrary to the representations of the agent, representative and/or employee of

24  defendant EQUITY ONE, the information regarding plaintiff's income, as referenced in

25  Paragraphs 13 and 17, above, had been changed, altered, grossly and falsely exaggerated, and

26

5

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

1  stated so that it would appear, falsely and fraudulently, that plaintiff's monthly income would

2  qualify him for the subject loan.   Plaintiff's monthly fixed income of $2,379.94 had been falsely,

3  fraudulently, and unknowingly to plaintiff,  increased on the application, claiming that plaintiff's

4  monthly income was precisely  $8,000 per month.  Such a sum was never indicated by plaintiff,

5  during any part of his prior conversations with defendant EQUITY ONE.  The false

6  representation of plaintiff's monthly income was supplied by defendant EQUITY ONE and its

7  agents and/or representatives.

8      19.    The falsely and fraudulently inflated monthly income figure of $8,000 appearing

9  on plaintiff's loan documents, which documents were filled out by defendant EQUITY ONE,

10  apparently qualified plaintiff for the loan with defendant DOWNEY SAVINGS; when, in fact,

11  with his actual income, plaintiff would not have so qualified for the loan.

12      20.    After numerous, frequent, and continuous efforts, defendants, and each of them,

13  persuaded plaintiff to agree to refinance his existing residential mortgage.  Plaintiff relied and

14  depended upon the statements made by defendant ERIK MEYERS and/or representatives of

15  defendants EQUITY ONE and DOWNEY SAVINGS.  Plaintiff's lack of education beyond a

16  high school diploma, combined with his advanced age and lack of mental acuity due to his

17  narcotic pain medications, only exacerbated his reliance and dependance upon the representations

18  of defendants DOWNEY SAVINGS, EQUITY ONE and ERIK MEYERS.  Further, these factors

19  reduced plaintiff's ability to understand and intelligently comprehend the entirety of the loan

20  documents, including, but not limited to, their negative financial consequences, as well as the

21  portion which falsely and fraudulently stated plaintiff's income at $8,000 per month.

22      21.    On or about May 25, 2005, the loan described as Loan No. 9041680158

23  (hereinafter the "subject transaction"), in which defendant DOWNEY SAVINGS was the lender,

24  closed, under the terms contained therein as more particularly described in Exhibit "A", attached

25  hereto.

26

6

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

22.    By the terms of Loan No. 9041680158, contained in the page titled "Broker Demand," defendant EQUITY ONE received a total of $21,009.68 from DOWNEY SAVINGS for locating and providing to defendant DOWNEY SAVINGS the victim, plaintiff Donald H. Fisher, as follows: $7,999.68 origination fee, $495 processing fee, $35 credit report fee, and $12,480 as a "rebate."

**FIRST CAUSE OF ACTION**
(For Violations of Code of Federal Regulations §226.34(a)(4))
(As Against All Defendants)

23.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 22 of the General Allegations, as though fully set forth herein.

24.    C.F.R. Section 226.34 reads in pertinent part as follows:

Prohibited acts or practices in connection with credit secured by a consumer's dwelling.
    (a)  Prohibited acts or practices for loans subject to § 226.32. A creditor extending mortgage credit subject to § 226.32 shall not: ...

    (4)  **Repayment ability**. Engage in a pattern or practice of extending credit subject to § 226.32 to a consumer based on the consumer's collateral without regard to the consumer's repayment ability, including the consumer's current and expected income, current obligations, and employment. There is a presumption that a creditor has violated this paragraph (a)(4) if the creditor engages in a pattern or practice of making loans subject to § 226.32 without verifying and documenting consumers' repayment ability. ... (Emphasis added.)

25.    Defendants, and each of them, wilfully, fraudulently, and maliciously disregarded plaintiff's lack of ability to repay the monthly mortgage on the subject transaction, although plaintiff fully disclosed his financial situation; specifically, that he was on a fixed monthly income of $2,379.94.

26.    Defendants fraudulently altered, changed, and subverted the income reported by plaintiff, and fraudulently exaggerated and falsified that income information in the application prepared by defendant EQUITY ONE's representative, fraudulently and falsely inflating plaintiff's monthly income figure to $8,000.

7

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

27.   Plaintiff relied and depended upon the false representations of defendants, and each of them.

28.   As a result thereof, plaintiff suffered losses and damages according to proof.

SECOND CAUSE OF ACTION
(For Elder Abuse)
(As Against All Defendants)

29.   Plaintiff realleges and incorporates by reference Paragraphs 1 through 22 of the General Allegations, and paragraphs 24 through 27 of the First Cause of Action, as though fully set forth herein.

30.   Defendants, and each of them, by virtue of their position of licensed real estate agents and/or brokers, were fiduciaries to plaintiff.

31.   Plaintiff was over the age of 65 at the time of defendants' conduct.

32.   Defendants, and each of them, in furtherance of a conspiracy, solicited, arranged, and financed the subject loan for the purpose of collecting extraordinary and excessive fees and interest from plaintiff without regard for plaintiff's ability to pay, his financial security, or his general well-being, and thereby attempted to appropriate plaintiff's money and property in violation of the due and lawful execution of their fiduciary duties to plaintiff.

33.   Plaintiff has suffered and will suffer additional harm from defendants' conduct, including financial loss and emotional distress, as plaintiff has lost or will lose tremendous equity in his Property without the means to maintain his Property, due in large part to his age, limited earning capacity, and several physical conditions.

34.   Defendants' conduct was a substantial factor in causing plaintiff's harm, in that absent defendants' conduct, plaintiff would be in a better financial position than that which he is currently finding himself, including but not limited to the foreclosure on his home.

35.   Plaintiff relied and depended upon the false representations of defendants, and each of them.

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

36. As a result thereof, plaintiff suffered general and special losses and damages according to proof.

### THIRD CAUSE OF ACTION
(For Intentional Misrepresentation)
(As Against all Defendants)

37. Plaintiff realleges and incorporates by reference Paragraphs 1 through 22 of the General Allegations, paragraphs 24 through 27 of the First Cause of Action, and paragraphs 30 through 35 of the Second Cause of Action, as though fully set forth herein.

38. Defendants, and each of them, made numerous misrepresentations, including those made by a representative of defendant EQUITY ONE prior to the signing of the refinance loan documents, as referenced in Paragraphs 13 and 14 above, relating to the rates and terms of the subject transaction, specifically that plaintiff's payments would be less than his prior mortgage payments, that his monthly mortgage payments would not increase over time, that the subject loan would put plaintiff in a far superior financial position than his existing loan, and that plaintiff's income would be acceptable and sufficient to meet the loan terms.

39. Defendants also concealed the fact that plaintiff's loan application would contain inaccurate and misleading information without his knowledge; specifically, that his income was falsely inflated on the loan application.

40. The misrepresentations made by defendants were material facts, essential to plaintiff's decision to consummate the subject transaction.

41. Defendants had knowledge of the falsity of their representations to plaintiff at the time they were made, and were aware that their fraudulent misrepresentations would cause, or be a substantial factor in causing, plaintiff to sign the documents ultimately required to consummate the subject transaction.

42. Plaintiff relied and depended on the representations made by defendants, and each of them, because, among other things, they held themselves out to be professionals within the

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

1    mortgage industry.  Representations made by mortgage brokers named herein or other real estate

2    professionals during the course of obtaining a mortgage were reasonably relied upon by plaintiff

3    borrower.   Further, plaintiff's lack of formal education beyond high school, combined with his

4    advanced age and lack of mental acuity, and his narcotic pain medications, increased his reliance

5    upon the representations of defendants DOWNEY SAVINGS, EQUITY ONE and ERIK

6    MEYERS.

7         43.    Plaintiff's reliance and dependance on defendants' misrepresentations were a

8    substantial factor and actual cause of plaintiff's injuries, in that without the conduct of

9    defendants, plaintiff would not have entered into the subject transaction, and thus none of the

10   resulting harm would have occurred.

11        44.    As a result thereof, plaintiff suffered losses and damages according to proof.

12                    FOURTH CAUSE OF ACTION
                (For Violations of California Financial Code § 50701)
13             (As Against Defendants EQUITY ONE and ERIK MEYERS)

14        45.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 22 of the

15   General Allegations, paragraphs 24 through 27 of the First Cause of Action, paragraphs 30

16   through 35 of the Second Cause of Action, and paragraphs 38 through 43 of the Third Cause of

17   Action as though fully set forth herein.

18        46.    California Financial Code section 50701, which pertains to loan brokers, reads in

19   pertinent part:

20             (a) As soon as practical after a borrower requests that the licensee
               arrange a loan to be made by another institutional lender, and
21             before the licensee performs brokerage services for the borrower,
               the licensee and borrower shall enter into a written loan brokerage
22             agreement that satisfies the requirements of this section.

23             (b) Both the licensee's authorized representative and the borrower
               shall sign and date the loan brokerage agreement, and the licensee
24             shall deliver a copy of the fully executed loan brokerage agreement

25   ////

26                                     10

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

to the borrower either upon execution, if the documents are signed in the licensee's office, or within three business days after execution.

(c) The loan brokerage agreement shall contain an explicit statement that (1) the licensee is acting as the agent of the borrower in providing brokerage services to the borrower, and (2) when acting as agent for the borrower, it owes to that borrower a fiduciary duty of utmost care, honesty, and loyalty in the transaction, including the duty of full disclosure of all material facts. If the licensee is authorized to act as an agent for any other person, the brokerage agreement shall contain a statement of that fact and identification of that person.
. . .

47.    Defendants EQUITY ONE and ERIK MEYERS acted as a loan (mortgage) broker for plaintiff; specifically, arranging for refinancing of plaintiff's existing first and second mortgage on the Property, with a new loan from defendant DOWNEY SAVINGS.

48.    Defendants EQUITY ONE and ERIK MEYERS failed to conform to the requirements in Financial Code section 50701, in that defendants EQUITY ONE and ERIK MEYERS, among other things, did not enter into a written loan brokerage agreement with plaintiff.

49.    Defendants EQUITY ONE and ERIK MEYERS also failed to conform to the requirements of Financial Code section 50701, subsections (b) through (c).

50.    Plaintiff relied and depended upon the false representations of defendants, and each of them.

51.    As a result thereof, plaintiff suffered and continues to suffer losses and damages according to proof.

<u>FIFTH CAUSE OF ACTION</u>
(For Fraud)
(As Against All Defendants)

52.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 22 of the General Allegations, paragraphs 24 through 27 of the First Cause of Action, paragraphs 30

11

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

1  through 35 of the Second Cause of Action, paragraphs 38 through 43 of the Third Cause of

2  Action, and paragraphs 46 through 50 of the Fourth Cause of Action as though fully set forth

3  herein.

4       53.    At all times herein relevant, Defendants, and each of them, misrepresented

5  plaintiff's ability to re-pay the proposed loan, and further falsely and intentionally misstated

6  plaintiff's monthly net income as $8,000, when in fact plaintiff's true, accurate, and disclosed

7  income was no more than $2,379.94 per month.

8       54.    Such misrepresentation by defendants, and each of them, was intended to and had

9  the known, expected, and intended consequence of qualifying plaintiff to defendants, including

10  defendant DOWNEY SAVINGS, for a refinance of his existing residential mortgage, all the

11  while defendants, and each of them, knew that plaintiff's real income was at least $6,500 per

12  month less than the income stated in the loan application prepared by defendants EQUITY ONE

13  and ERIK MEYERS, as more specifically and particularly proffered by plaintiff in Paragraph 13,

14  above, in furtherance of the conspiracy. Defendants, and each of them, knew or should have

15  known that by selling their loan to plaintiff, they were placing plaintiff in an untenable financial

16  position, to the extent that plaintiff would be in great danger of losing his home.

17       55.    As a result thereof, plaintiff suffered losses and damages according to proof.

18                  **SIXTH CAUSE OF ACTION**
       (For Violations of Business and Professions Code § 17500)

19                  (As Against All Defendants)

20       56.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 22 of the

21  General Allegations, paragraphs 24 through 27 of the First Cause of Action, paragraphs 30

22  through 35 of the Second Cause of Action, paragraphs 38 through 43 of the Third Cause of

23  Action, and paragraphs 46 through 50 of the Fourth Cause of Action as though fully set forth

24  herein.

25  ////

26

                                        12

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

57. Business and Professions Code, section 17500, reads in pertinent part:

It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, ... in any newspaper or other publication, or any advertising device, ... or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine.

58. Defendants offered services to plaintiff; specifically, arranging for and closing a mortgage transaction. Plaintiff is informed and believes and thereon alleges that defendants have engaged in similar wrongful conduct with others, and that defendants are, or were, engaged in a pattern and practice of similar wrongful conduct.

59. Defendants' statements and representations to plaintiff were misleading.

60. The misrepresentations made by defendants were intentional, or in the alternative, negligent.

61. Plaintiff relied and depended upon the false representations of defendants, and each of them.

62. As a result thereof, plaintiff, and others, suffered and continue to suffer losses and damages according to proof.

////

13

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

1

SEVENTH CAUSE OF ACTION

(For Violations of Business and Professions Code §17200)

2

(As Against All Defendants)

3        63.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 22 of the

4    General Allegations, paragraphs 24 through 27 of the First Cause of Action, paragraphs 30

5    through 35 of the Second Cause of Action, and paragraphs 38 through 43 of the Third Cause of

6    Action as though fully set forth herein.

7        64.    Business and Professions Code, section 17200 reads:

8            As used in this chapter, unfair competition shall mean and include
            any unlawful, unfair or fraudulent business act or practice and
9            unfair, deceptive, untrue or misleading advertising and any act
            prohibited by Chapter 1 (commencing with Section 17500) of Part
10            3 of Division 7 of the Business and Professions Code.

11        65.    Defendants violated Business & Professions Code section 17200, as follows:

12            Defendants engaged in unfair competition, specifically by providing plaintiff with

13    deceptive and misleading information to induce plaintiff to do business with defendants.  Such

14    lending practices are unlawful, unfair and fraudulent; specifically, arranging for and closing a

15    mortgage transaction.

16        66.    Defendants' statements and representations to plaintiff were untrue, misleading.

17        67.    The unlawful, unfair and/or fraudulent business acts and/or practices by

18    defendants were intentional, or in the alternative, negligent.

19        68.    Plaintiff relied and depended upon the deceptive, untrue and misleading

20    advertising of defendants, and each of them.

21        69.    As a result thereof, plaintiff suffered and continue to suffer losses and damages

22    according to proof.

23    ////

24    ////

25

26

14

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

## EIGHTH CAUSE OF ACTION
### (For Violations of the Truth in Lending Act)
### (As Against Defendants DOWNEY SAVINGS, EQUITY ONE and DOES 1 through 10, inclusive)

70.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 22 of the General Allegations, as though fully set forth herein.

71.    Accurate (or within allowable tolerances) "material disclosures"[1] were not provided as required by the Truth in Lending Act ("TILA") to plaintiff.

72.    Plaintiff relied and depended upon the false representations of defendants, and each of them, to wit: Defendants, and each of them, misrepresented that plaintiff's minimal monthly mortgage payments would be affordable for plaintiff, and that such payments would not expose him to a negative amortization, by each month, increasing his principal indebtedness.

73.    As a result thereof, plaintiff suffered losses and damages according to proof.

## NINTH CAUSE OF ACTION
### (For Conspiracy)
### (As Against Defendants DOWNEY SAVINGS, EQUITY ONE, and DOES 1 through 10, inclusive)

74.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 22 of the General Allegations, paragraphs 24 through 27 of the First Cause of Action, paragraphs 30 through 35 of the Second Cause of Action, paragraphs 38 through 43 of the Third Cause of Action, and paragraphs 46 through 50 of the Fourth Cause of Action, as though fully set forth herein.

75.    Defendants, and each of them, conspired between and amongst themselves to

---

[1] The term "material disclosures" means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in the Code of Federal Regulations, Section 226.32(c) and (d). *12 C.F.R. §226.32.*

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

1   locate, contact, and prey upon a class of individuals, including plaintiff, described as, among

2   other things, homeowners of advanced age, with substantial equity, limited education, and

3   limited real estate transactional experience, and to prey upon them in a process known

4   vernacularly as "predatory lending," knowing all the while that plaintiff's fixed income was

5   inadequate, or would soon become inadequate to make minimal loan payments, resulting, to

6   Defendants' gain and plaintiff's harm, in foreclosure and capture by Defendants of the plaintiff's

7   primary residence, and his equity therein.

8        76.    As a result thereof, plaintiff suffered and continue to suffer losses and damages

9   according to proof.

10                          TENTH CAUSE OF ACTION
                (Injunction as Against Defendants FCI LENDER SERVICES, INC.
11                          and DOWNEY SAVINGS)

12       77.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 22 of the

13  General Allegations, paragraphs 24 through 27 of the First Cause of Action, paragraphs 30

14  through 35 of the Second Cause of Action, paragraphs 38 through 43 of the Third Cause of

15  Action, paragraphs 46 through 50 of the Fourth Cause of Action, and Paragraphs 71 through 72

16  of the Eighth Cause of Action, as though fully set forth herein.

17       78.    Defendant FCI LENDER SERVICES, INC. is a corporation licensed to do

18  business in the State of California, and doing business at 8180 East Kaiser Blvd., Anaheim Hills,

19  California 92808 as a foreclosure service provider. Defendant FCI LENDER SERVICES, INC.

20  is presently acting as a trustee for its co-defendant, DOWNEY SAVINGS.

21       79.    On or about December 21, 2007, defendant FCI LENDER SERVICES, INC.

22  caused to be recorded in the Official Records of Sonoma County a Notice of Default and Election

23  to Sell Under Deed of Trust. Defendant FCI LENDER SERVICES, INC. recorded this Notice on

24  behalf of its co-defendant, DOWNEY SAVINGS.

25  ////

26                                      16

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

80.     On or about March 24, 2008, defendant FCI LENDER SERVICES, INC. served a Notice of Trustee's Sale, setting the date for sale of plaintiff's property on April 18, 2008, at 11:30 a.m.

81.     Defendants, and each of them, have threatened to and will, unless restrained by the Court, sell plaintiff's real property and thereby collect interest, principal, and charges to which defendants are not entitled and will thereby be unjustly enriched to the detriment of plaintiff.

82.     Unless defendants, and each of them, are enjoined and restrained from continuing with the foreclosure proceedings, plaintiff will suffer irreparable injury in that the real property that secures the purported Deed of Trust is plaintiff's home, which home, and the substantial equity held by plaintiff, will be thereby forever lost, and plaintiff's home is unique to plaintiff.

83.     Plaintiff has no plain, speedy, or adequate remedy at law, and injunctive relief is expressly authorized by Sections 526 and 731 of the Code of Civil Procedure.

WHEREFORE, Plaintiff prays for judgment as follows:

FOR THE FIRST CAUSE OF ACTION FOR VIOLATIONS OF CODE OF FEDERAL REGULATIONS §226.34(a)(4), AGAINST ALL DEFENDANTS:

1.     Judgment in favor of plaintiff for double the actual damages to be determined at trial;

2.     Judgment in favor of plaintiff for double the value of plaintiff's pain and suffering according to proof;

3.     Judgment in favor of plaintiff for punitive awards as directed by the Court.

4.     Judgment for plaintiff's attorney's fees, according to proof.

FOR THE SECOND CAUSE OF ACTION FOR ELDER ABUSE, AS AGAINST ALL DEFENDANTS:

////

17

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

1   5.    Judgment in favor of plaintiff for double the actual damages to be determined at
2   trial;

3   6.    Judgment in favor of plaintiff for double the value of plaintiff's pain and suffering
4   according to proof;

5   7.    Judgment in favor of plaintiff for punitive awards as directed by the Court;

6   8.    Judgment for plaintiff's attorney's fees, according to proof.

7   FOR THE THIRD CAUSE OF ACTION FOR INTENTIONAL MIS-
8   REPRESENTATION, AS AGAINST ALL DEFENDANTS:

9   9.    Judgment in favor of plaintiff for double the actual damages to be determined at
10  trial;

11  10.    Judgment in favor of plaintiff for rescission of the subject transaction;

12  11.    Judgment in favor of plaintiff for punitive awards as directed by the Court;

13  12.    Judgment for plaintiff's attorney's fees, according to proof.

14  FOR THE FOURTH CAUSE OF ACTION FOR VIOLATIONS OF CALIFORNIA
15  FINANCIAL CODE § 50701, AGAINST DEFENDANT EQUITY ONE:

16  13.    Judgment in favor of plaintiff for double the actual damages to be determined at
17  trial;

18  14.    Judgment in favor of plaintiff for punitive awards as directed by the Court;

19  15.    Judgment for plaintiff's attorney's fees, according to proof.

20  FOR THE FIFTH CAUSE OF ACTION FOR FRAUD, AGAINST ALL
21  DEFENDANTS;

22  16.    Judgment in favor of plaintiff against all defendants, for special and general
23  damages according to proof;

24  17.    Judgment in favor of plaintiff for punitive awards as directed by the Court;

25  18.    Judgment for plaintiff's attorney's fees, according to proof.

26

18

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

1    FOR THE SIXTH CAUSE OF ACTION FOR VIOLATIONS OF BUSINESS AND

2    PROFESSIONS CODE § 17500, AGAINST DEFENDANT EQUITY ONE:

3        19.    Judgment in favor of plaintiff for $2,500 per violation, as proved at trial;

4        20.    Judgment in favor of plaintiff for restitution of moneys taken from plaintiff, and

5    from all other persons who were victimized by defendants' predatory lending practices, in an

6    amount to be determined at trial.

7    FOR THE SEVENTH CAUSE OF ACTION FOR VIOLATIONS OF BUSINESS AND

8    PROFESSIONS CODE § 17200, AGAINST DEFENDANTS DOWNEY SAVINGS, EQUITY

9    ONE, ERIK MEYERS, and DOES 1 through 10, inclusive:

10        21.    Judgment in favor of plaintiff against all defendants, for special and general

11    damages according to proof;

12        22.    Judgment in favor of plaintiff for punitive awards as directed by the Court;

13        23.    Judgment for plaintiff's attorney's fees, according to proof.

14    FOR THE EIGHTH CAUSE OF ACTION FOR TRUTH IN LENDING VIOLATIONS,

15    AGAINST DEFENDANTS DOWNEY SAVINGS, EQUITY ONE, ERIK MEYERS, and DOES

16    1 through 10, inclusive:

17        24.    Rescission of the loan transaction, including a declaration that plaintiff is not

18    liable for any finance charges or other charges imposed by defendants and third parties.

19        25.    A declaration that the security interest in the subject property created under the

20    subject transaction is void, and an order requiring defendants to release such security interest.

21        26.    Return of any money or property given by the plaintiff to anyone, including

22    defendants DOWNEY SAVINGS, EQUITY ONE, ERIK MEYERS, and DOES 1 through 10,

23    inclusive.

24        27.    Statutory damages of $2,000 per violation as determined at trial.

25    ////

26                                         19

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

28.   An order that, because defendants failed to act in response to plaintiff's notice of rescission, plaintiff has no duty to tender the loan proceeds to defendant DOWNEY SAVINGS, or in the alternative, if tender is required, a determination of the amount of the tender obligation in light of all of the plaintiff's claims, and an order requiring defendant DOWNEY SAVINGS to accept tender on reasonable terms and over a reasonable period of time.

29.   Enjoin defendant DOWNEY SAVINGS, its agents, representatives, or assignees, during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the subject property, from recording any deeds or mortgages regarding the subject property, or from otherwise taking any steps to deprive plaintiff of ownership in the subject property.

30.   Judgment in favor of plaintiff for double the actual damages to be determined at trial;

31.   An award of reasonable attorney's fees and costs, pursuant to *15 U.S.C. § 1640(a)(3)*; and

32.   Such other relief at law or equity as this Court may deem just and proper.

FOR THE NINTH CAUSE OF ACTION FOR CONSPIRACY, BY AND BETWEEN DEFENDANTS DOWNEY SAVINGS, EQUITY ONE, AND ERIK MEYERS:

33.   For conspiring one with another and various other named and unnamed co-conspirators to locate unsophisticated, elderly home mortgage holders with substantial home equity, and to sell such individuals an adjustable rate mortgage (hereinafter "ARM"), all to plaintiff's damages, vis a vis, plaintiff's current ARM, causing plaintiff, by the exact terms of the refinance, to unknowingly bind himself to an ARM that he could not afford, when accelerated or adjusted.

34.   Judgment in favor of plaintiff for punitive awards as directed by the Court;

35.   Judgment for plaintiff's attorney's fees, according to proof.

20

Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

1    FOR THE TENTH CAUSE OF ACTION FOR INJUNCTION AS AGAINST

2    DEFENDANTS FCI LENDER SERVICES, INC. and DOWNEY SAVINGS & LOAN

3    ASSOCIATION:

4        36.    For a temporary restraining order, a preliminary injunction, and a permanent

5    injunction enjoining and restraining defendants, and each of them, from any non-judicial

6    foreclosure proceedings against the subject property.

7            As to all defendants, an order directing that:

8            Each and every defendant shall permanently halt all present and future efforts to

9    foreclose on plaintiff's residential property located at 2335 Marsh Court, Santa Rosa, California

10   95401;

11           Each and every defendant is prevented from collecting money, whether principal

12   or interest, or penalty, from plaintiff;

13           Each and every defendant permanently return to plaintiff any penalty of any kind

14   assessed to date against plaintiff, due to the transaction or transactions to date.

15   DATED:  April 8, 2008

16

17                        JAMES M. BARRETT
                          Attorney for Plaintiff
18                        HARRY DONALD FISHER

19

20

21

22

23

24

25

26
                                        21
Fisher v. Downey Savings & Loan Assn., et al.
**Complaint**

EXHIBIT A

Legal Tabs Co. 1-800-322-3022

Recycled    Stock # EXA-5-B

**EXHIBIT A**

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☒ Conventional  ☐ Other (explain): ☐ FHA  ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number 41680158 |
|---|---|---|---|

| Amount $416,000.00 | Interest Rate 1.100 % | No. of Months 480 | Amortization Type: | ☐ Fixed Rate  ☐ Other (explain): ☐ GPM  ☒ ARM (type): |
|---|---|---|---|---|

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 2335 Marsh Court, Santa Rosa, CA 95403 | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) | Year Built 1990 |
|---|---|

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☒ Refinance  ☐ Construction-Permanent | ☐ Other (explain): | Property will be: ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 2000 | Original Cost $219,000.00 | Amount Existing Liens $ 371,793.00 | Purpose of Refinance Cash-Out/Other | Describe Improvements ☐ made ☐ to be made Cost: $ 0.00 |
|---|---|---|---|---|

| Title will be held in what Name(s) Harry Don Fisher | Manner in which Title will be held Single man | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) | |
|---|---|

### III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | HARRY D FISHER | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| | Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|---|
| | 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 | (707) 526-2149 | 04/25/1934 | 12 | | | | |

| ☐ Married ☒ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 0 ages | ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent 5 No. Yrs. 2335 Marsh Court Santa Rosa CA 95403 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

### IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer | ☐ Self Employed | Yrs. on this job | Name & Address of Employer | ☐ Self Employed | Yrs. on this job |

| | | Yrs. employed in this line of work/profession | | | Yrs. employed in this line of work/profession |
|---|---|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04
Page 1 of 4

Initials: _____

VMP-21N(CA) (0305).01   VMP Mortgage Solutions (800)521-7291

41680158

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 0.00 | $ | $ 0.00 | Rent | $ 0.00 | |
| Overtime | 0.00 | | 0.00 | First Mortgage (P&I) | 1,366.00 | $ 1,071.67 |
| Bonuses | 0.00 | | 0.00 | Other Financing (P&I) | 303.00 | 0.00 |
| Commissions | 0.00 | | 0.00 | Hazard Insurance | 0.00 | 115.54 |
| Dividends/Interest | 0.00 | | 0.00 | Real Estate Taxes | 0.00 | 175.00 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 8,000.00 | 0.00 | 8,000.00 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: | 0.00 | 0.00 |
| Total | $ 8,000.00 | $ | $ 8,000.00 | Total | $ 1,669.00 | $ 1,362.21 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    Notice:  Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| B | Social Security/Disability Income | $ 2,250.00 |
| B | Pension/Retirement Income | 5,750.00 |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☑ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| | | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| Cash deposit toward purchase held by: | $ 0.00 | Name and address of Company | $ Payment/Months | |
| | | GREEN POINT SAVINGS | *303.00 | *67,406.00 |
| List checking and savings accounts below | | | 223 | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Washington Mutual | | | | |
| | | Acct. no. 4800085084465 | | |
| | | Name and address of Company | | |
| | | HSBC NV | 212.00 | 9,142.00 |
| Acct. no. 4112357856 | $ 9,000.00 | | 44 | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 410017391340 | | |
| | | Name and address of Company | | |
| | | HSBC/COSTC | 27.00 | 821.00 |
| | | | 31 | |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | Acct. no. 246005539109207 | | |
| | | Name and address of Company | | |
| | | DOWNEY SAVINGS & LOAN | [1,030.00] | [400,000.00] |
| | | | 480 | |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | Acct. no. 9041588054 | | |
| | | Name and address of Company | | |
| | | COUNTRYWIDE HOME LOAN | *1,366.00 | *320,000.00 |
| | | | 360 | |
| Acct. no. | $ | | | |
| Stocks & Bonds (Company name/number & description) | $ | Acct. no. 55246573 | | |
| | | Name and address of Company | $ Payment/Months | |
| Life insurance net cash value | $ 0.00 | | | |
| Face amount: $ 0.00 | | | | |
| Subtotal Liquid Assets | $ 9,000.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 540,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 239.00 | |
| Total Assets a. | $ 549,000.00 | Net Worth (a minus b) $ 539,037.00 | Total Liabilities b. | $ 9,963.00 |

41680158

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

-21N(CA) (0305).01

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 2335 Marsh Court | | | | | | | |
| Santa Rosa, CA 95403 | H | SFR | $ 540000 | $ 385500 | $ 0 | $ 371793 | $ 250 | $ 0 |
| | | | | | | | | |
| | | | | | | | | |
| | Totals | $ 540000 | $ 385500 | $ 0 | $ 371793 | $ 250 | $ 0 |

**List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):**

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price. | $ 0.00 |
| b. | Alterations, improvements, repairs | 0.00 |
| c. | Land (if acquired separately) | 0.00 |
| d. | Refinance (incl. debts to be paid off) | 0.00 |
| e. | Estimated prepaid items | 9,018.44 |
| f. | Estimated closing costs | 2,963.00 |
| g. | PMI, MIP, Funding Fee | 0.00 |
| h. | Discount (if Borrower will pay) | 0.00 |
| i. | **Total costs (add items a through h)** | 11,981.44 |
| j. | Subordinate financing | 0.00 |
| k. | Borrower's closing costs paid by Seller | 0.00 |
| l. | Other Credits (explain) | |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 416,000.00 |
| n. | PMI, MIP, Funding Fee financed | 0.00 |
| o. | Loan amount (add m & n) | 416,000.00 |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | -404,018.56 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | | Borrower Yes No | Co-Borrower Yes No |
|---|---|---|---|
| a. | Are there any outstanding judgments against you? | ☐ ☒ | ☐ ☐ |
| b. | Have you been declared bankrupt within the past 7 years? | ☐ ☒ | ☐ ☐ |
| c. | Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ ☒ | ☐ ☐ |
| d. | Are you a party to a lawsuit? | ☐ ☒ | ☐ ☐ |
| e. | Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ ☒ | ☐ ☐ |
| f. | Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ ☒ | ☐ ☐ |
| g. | Are you obligated to pay alimony, child support, or separate maintenance? | ☐ ☒ | ☐ ☐ |
| h. | Is any part of the down payment borrowed? | ☐ ☒ | ☐ ☐ |
| i. | Are you a co-maker or endorser on a note? | ☐ ☒ | ☐ ☐ |
| j. | Are you a U.S. citizen? | ☒ ☐ | ☐ ☐ |
| k. | Are you a permanent resident alien? | ☐ ☒ | ☐ ☐ |
| l. | Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☒ ☐ | ☐ ☐ |
| m. | Have you had an ownership interest in a property in the last three years? | ☒ ☐ | ☐ ☐ |
| | (1) What type of property did you own - - principal residence (PR), second home (SH), or investment property (IP)? | PR | |
| | (2) How did you hold title to the home - - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☒ I do not wish to furnish this information. | CO-BORROWER | ☐ I do not wish to furnish this information. |
|---|---|---|---|
| **Ethnicity:** | ☐ Hispanic or Latino　☐ Not Hispanic or Latino | **Ethnicity:** | ☐ Hispanic or Latino　☐ Not Hispanic or Latino |
| **Race:** | ☐ American Indian or Alaska Native　☐ Asian　☐ Black or African American | **Race:** | ☐ American Indian or Alaska Native　☐ Asian　☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander　☐ White | | ☐ Native Hawaiian or Other Pacific Islander　☐ White |
| **Sex:** | ☐ Female　☐ Male | **Sex:** | ☐ Female　☐ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) Erik Meyers | Name and Address of Interviewer's Employer Equity One Financial Corp. |
|---|---|---|
| ☐ Face-to-face interview | Interviewer's Signature　　　　　　Date | 23875 W. Ventura Blvd. #204 |
| ☒ Mail | | Calabasas, CA 91302 |
| ☐ Telephone | Interviewer's Phone Number (incl. area code) | |
| ☐ Internet | (818) 224-3781 | |

*Continuation Sheet/Residential Loan Application*

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark *B* for Borrower or *C* for Co-Borrower. | Borrower:<br>FISHER, HARRY D | Agency Case Number: |
| | Co-Borrower: | Lender Case Number:<br>41680158 |

*Under California Civil Code 1812.30(j) "Credit applications for the obtainment of money, goods, labor, or services shall clearly specify that the applicant, if married, may apply for a separate account."*

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
| X | | X | |



# Fidelity National Title Company

6060 Sepulveda Boulevard First Floor • Van Nuys, CA 91411
(818) 881-7800 • FAX (818) 776-2253

**DATE:** May 24, 2005
**ESCROW NO:** 69804-CV
**ESCROW OFFICER:** Cheryl Vajnar

**TIME:** 11:49:02

**CLOSING DATE:** April 29, 2005

## BORROWER ESTIMATED CLOSING STATEMENT

**LENDER(S):** DOWNEY SAVINGS AND LOAN
**BORROWER(S):** Harry D. Fisher
**PROPERTY:** 2335 Marsh Court, Santa Rosa, CA 95403



| | $ DEBITS | $ CREDITS |
|---|---|---|
| **FINANCIAL:** | | |
| New 1st Trust Deed to DOWNEY SAVINGS AND LOAN | | 416,000.00 |
| Refundable Cushion | 300.00 | |
| **TITLE CHARGES:** | | |
| ALTA Loan Policy (10-17-92) w/Form 1 Cov. for 457,600.00 | 1,590.00 | |
| Endorsement Fee(s) | 25.00 | |
| Recording Trust Deed(s) | 88.00 | |
| **ESCROW CHARGES** | | |
| Escrow Fee | 550.00 | |
| Doc Prep Fees | 125.00 | |
| Courier Fees | 35.00 | |
| **NEW LOAN CHARGES - DOWNEY SAVINGS AND LOAN** | | |
| **Total Loan Charges: $9,294.06** | | |
| Loan Origination Fee    Equity One Financial | 7,999.68 | |
| Appraisal Fee    Equity One Financial | | |
| Credit Report    Equity One Financial | 35.00 | |
| Tax Service Fee    LANDAMERICA | 56.00 | |
| Document Fees    DOWNEY SAVINGS AND LOAN | 200.00 | |
| Loan Processing Fee    Equity One Financial | 495.00 | |
| Underwriting Fee    DOWNEY SAVINGS AND LOAN | 325.00 | |
| Appraisal Review | 40.00 | |
| Wire Fee    DOWNEY SAVINGS AND LOAN | 50.00 | |
| Credit report    LANDAMERICA | 12.00 | |
| Wire Received | | 411,106.76 |
| Flood Determination Fee    LANDAMERICA | 8.00 | |
| Flood Monitoring Fee | 4.00 | |
| Return wire | 411,106.76 | |
| Interest at $69.38 per day from 05/31/05 to 06/01/05 | 69.38 | |
| **PAYOFFS - Countrywide Home Loan Servicing** | | |
| **Total Payoff $331,227.66** | | |
| Principal Balance | 320,000.00 | |
| Interest to 04/30/05 | 1,557.26 | |
| Interest Fr. 04/30/05 To 06/01/05 | 1,718.40 | |
| Forwarding/Demand Fee | 60.00 | |
| Reconveyance Fee | 45.00 | |
| Prepayment Penalty | 7,840.00 | |
| Recording Fee | 7.00 | |
| **PAYOFFS - GreenPoint Mortgage** | | |
| **Total Payoff $71,776.02** | | |
| Principal Balance | 67,406.40 | |
| Interest Fr. 03/15/05 To 06/01/05 | 763.62 | |
| Forwarding/Demand Fee | 40.00 | |
| Reconveyance Fee | 45.00 | |
| Recording Fee | 21.00 | |
| Early Termination Fee | 500.00 | |
| HOLD-VERIF CREDIT LINE CLOSED | 3,000.00 | |

COPY

Date:       May 24, 200"
Escrow No:   69804-CV                                            Page 2

**MISCELLANEOUS CHARGES:**
My Mobile Notaries, Inc. Document Signing Fee          175.00
Notary Fee 2nd Trip                                    175.00


ESTIMATED DUE BORROWER                    $        639.26

ESTIMATED TOTALS                          $    827,106.76    $    827,106.76


Harry D. Fisher





**DOWNEY SAVINGS**
and Loan Association, F.A.

10021 BLOOMFIELD STREET
LOS ALAMITOS, CA 90720

**LENDER'S ESCROW INSTRUCTIONS**

DATE:     May 23, 2005
FUNDER:   CATHERINE LACEY
PHONE NO: (562) 795-1604
FAX NO:   (562) 683-2123

LOAN NO:  9041680158
BORROWER: HARRY D FISHER
CASE NO:

PROPERTY ADDRESS: 2335 Marsh Court, Santa Rosa, CA  95403
COUNTY:   Sonoma

| SETTLEMENT FIDELITY NATIONAL TITLE COMPANY | TITLE: FIDELITY NATIONAL TITLE CO |
|---|---|
| AGENT:   6060  SEPULVEDA BOULEVARD FIRST | 17542 EAST 17TH ST, STE 300 |
| VAN NUYS, CA 91411 | TUSTIN, CA 92780 |
| (818) 881-7800 | (714) 368-8600 |
| CHERYL VAJNAR | CHERYL VAJNAR |
| 69804-CV | 39104442 |

Settlement Agent agrees that by accepting this assignment he/she will comply with applicable privacy laws and regulations, including the Gramm-Leach-Bliley Act of 1999.

Enclosed herewith are documents relating to the above referenced loan. Please have Borrower(s) execute documents exactly as their name appears and return to Lender. You are to make no changes to the documents without Lender's written authorization. All approved changes must be initialed by the Borrower(s) and any other party to the instrument being changed.

You are directed to follow these instructions in full, after which time you may request funds.  Do not close this transaction unless you can strictly comply with these instructions. These instructions can only be changed, modified or waived in writing and delivered or faxed to you by an authorized agent of Lender.

**DOCUMENTS** - Please provide 2 certified copies of the Note and Deed of Trust including all riders.

| | | |
|---|---|---|
| [X] Lenders Escrow Instructions | [X] Servicing Disclosure Statement | **Documents to be Recorded** |
| [X] Note | [X] Loan Program Disclosure | [X] Deed of Trust |
| [X] Notice of Right to Cancel* | [X] Signature Statement | ☐ 1-4 Family Rider |
| [X] Borrower Instruction re: Notice of Right to Cancel* | ☐ FHA/VA Addendum to HUD-1 | ☐ Condominium / PUD Rider |
| [X] Federal Truth-in-Lending Disclosure Statement | ☐ FHA/VA Addendum to Application | [X] Adjustable Rate Rider |
| [X] Hazard Insurance Requirements | [X] Misc items for borrower(s) signature | ☐ Rider to Prom Note and Security Instrument |
| ☐ Notification of Flood Area Determination | ☐ Withhold Agreements | ☐ Constr Rider to Security Instrument |
| ☐ Mortgage Insurance Disclosure / Cancellation | [X] Rider to Prom Note and Security Instr | ☐ Second Home Rider |
| ☐ Tax Information Authorization | ☐ Constr Loan Addendum Amending Note | ☐ Notice of Default |
| [X] W-9 Request for Taxpayer Id Number | ☐ Guaranty Prepayment Penalty Rider | ☐ VA Rider |
| [X] Compliance Agreement | ☐ Balloon Rider | ☐ Other |
| | ☐ CIP Non SSN# Form | |

* Each "Borrower" or "Trustor" (as either term is defined in the Security Instrument) must (i) sign and date the Notice of Right to Cancel, which must be completely filled in, with each change (addition and/or deletion) initialed by each signatory and (ii) sign and date the Federal Truth-in-Lending Act ("TILA") Disclosure Statement. You are to provide two (2) completely filled in copies of the Notice of Right to Cancel and one (1) copy of the TILA Disclosure Statement (together with the final GFE as an attachment) to each signatory. The required number of copies has been provided to you by Lender.

**PRIOR TO FUNDING**  [X] All Loan conditions satisfied. See attached list
[X] Certified copy of your original Escrow instructions, amendments and Estimated Closing Statement (signed by applicable parties)
[X] Evidence of Hazard Insurance coverage     ☐ Evidence of Flood Insurance coverage     ☐ Evidence of Earthquake Insurance coverage

**ALL DOCUMENTS MUST BE IN OUR OFFICE (by 1:00 p.m.) 48 HOURS PRIOR TO DISBURSEMENT**

**TITLE REQUIREMENTS**
- ALTA Policy in the amount of $ 457,600.00          showing title vested as:
  HARRY D FISHER, An Unmarried Man

- Secondary Financing in the amount of $N/A          has been approved.
- The Policy must be free from encumbrances except items(s) 5-8          of the Preliminary Title Report dated 03/24/2005
  with an exception for current real property taxes due but not yet payable. If any entity listed in any title exception has the right to assess or lien, the
  policy must state that nothing is owing as of the issue date:
- Tax Message: Pay 1st And 2nd Installments of 2004 - 2005
- The Policy must contain endorsements 100 without deletion, 110.9, 116, 111.8
- The following endorsements will also be required as applicable:
  a) 100.12 for CC&R's without Mortgage protection rights
  b) 100.23 or 100.24 for drilling rights                          d) 103.5 for any claims of water under Schedule B
  c) 103.1 for any unlocated easement                              e) 107.5 for any leasehold interest

Note: Where required endorsement is not available please substitute ALTA form or special endorsement.

DO NOT RECORD OUR DEED OF TRUST UNLESS YOU CAN PROVIDE, AFTER RECORDING, THE ORIGINAL AND ONE COPY OF THE ALTA POLICY AS SET FORTH ABOVE. THE TOTAL CONSIDERATION IN THIS TRANSACTION EXCEPT FOR YOUR LOAN AND APPROVED SECONDARY FINANCING (if any) MUST PASS THROUGH YOUR ESCROW IN THE FORM OF CASH. DO NOT PROCEED WITH THE CLOSING IF YOU HAVE KNOWLEDGE OF A CONCURRENT OR SUBSEQUENT ESCROW OR SALE OF SUBJECT PROPERTY UPON COMPLETION OF THIS LOAN.

Please forward (Attn: QUALITY CONTROL) two certified copies of Borrower's and Seller's Settlement Statement within 24 hours after recordation. Forward water or stock certificate showing lender (as shown above) as first pledgee, where applicable. Lender is to be at no expense in this transaction. If for any reason this loan does not close, please return all documents. If the above referenced Deed of Trust is not recorded within Five business days from the date we disburse our loan proceeds, you are to return the funds to us with accrued interest thereon at $ 69.38000 per diem from date funds were disbursed to and including the date funds are received by us. Settlement Agent is to comply with all regulations regarding the completion of the HUD-1 or HUD1A Settlement Statement. Please notify Lender if you have any questions regarding charges shown on the attached.



**DOWNEY SAVINGS**
and Loan Association, F.A.

**LENDER'S ESCROW INSTRUCTIONS**
**Itemization of Charges**

DATE: May 23, 2005
LOAN AMOUNT: 416,000.00
PURCHASE PRICE: 0.00
FIRST PAYMENT DATE: July 1, 2005
MATURITY DATE: June 1, 2045
COMMITMENT EXP: 07/03/2005

LOAN NO: 9041680158
BORROWER: HARRY D FISHER
ESCROW NO: 69804-CV
ORDER NO: 39104442

"ATTENTION ESCROW HOLDER: THE REAL ESTATE SETTLEMENT PROCEDURES ACT REQUIRES YOU (AS SETTLEMENT AGENT) TO SHOW THE NAME (I.E., PERSON OR FIRM) OF EACH SERVICE PROVIDER THAT ULTIMATELY RECEIVES PAYMENT FOR ANY ITEMS LISTED IN SECTION "L" OF THE HUD-1 (EXCEPT THOSE PAID OR RETAINED BY THE LENDER) INCLUDING BUT NOT LIMITED TO, THOSE FEES PAID OUTSIDE OF CLOSING ('POC'). PLEASE REFER TO THE ATTACHED GOOD FAITH ESTIMATE OF SETTLEMENT CHARGES AND THE PROVIDER OF SERVICE SCHEDULE FOR CORRECT/REQUIRED INFORMATION."

| FEE DESCRIPTION | 'PD BY | AMOUNT CHARGED | PD OUTSIDE CLOSING | NET DUE | PAID TO |
|---|---|---|---|---|---|
| Credit Report | Bu | 12.00 | | 12.00 | Informative Research |
| Wire Transfer | Bu | 50.00 | | 50.00 | |
| Underwriting | Bu | 325.00 | | 325.00 | |
| Document | Bu | 200.00 | | 200.00 | |
| Flood Determination | Bu | 8.00 | | 8.00 | LandAmerica |
| Flood Monitoring | Bu | 4.00 | | 4.00 | LandAmerica |
| Tax Service | Bu | 56.00 | | 56.00 | LandAmerica |
| Broker - Origination | Bu | 7,999.68 | | 7,999.68 | EQUITY ONE FINANCIAL |
| Broker - Appraisal | Bu | 350.00 | 350.00 | 0.00 | EQUITY ONE FINANCIAL |
| Broker - Processing | Bu | 495.00 | | 495.00 | EQUITY ONE FINANCIAL |
| Broker - Credit Report | Bu | 35.00 | | 35.00 | EQUITY ONE FINANCIAL |
| | | | | | |
| Interest of 2 Days | | | | | |
| @ 69.38000 @ 6.004% | Bu | 138.76 | | 138.76 | |
| | | | | | |
| Settlement or Closing Fee | Bu | 550.00 | | 550.00 | |
| Closing Agent Doc Fee | Bu | 125.00 | | 125.00 | Other |
| Notary Fee | Bu | 25.00 | | 25.00 | |
| Title Insurance | Bu | 1,485.00 | | 1,485.00 | |
| Closing Agent Fed Ex/Messenger | Bu | 35.00 | | 35.00 | |
| Recording Fees | Bu | 88.00 | | 88.00 | |

- Title Insurance, Escrow / Closing, Notary and Recording charges not included in proceeds calculation unless paid outside of closing by lender
- Paid by designation:    Bu = Borrower    S = Seller    L = Lender    B = Broker    O = Other
- (e) means an estimate

Downey Savings and Loan Association, F.A. considers the costs shown on the Lender's Escrow Instructions to be final. Escrow Holder must report any discrepancies to Downey Savings and Loan Association, F.A. prior to the signing (or execution) of the loan documents. No amounts in excess of the amounts shown on the Lender's Escrow Instructions are authorized for payment.
- A Broker Rebate of $12,480.00 (  3.000%) is being paid by Downey Savings and Loan Association, F.A., to a mortgage broker for this transaction - POC.

Acknowledged and accepted by: _____
                              Settlement Agent

HARRY D FISHER  _____

_____      _____

_____      _____

_____      _____

2D006-2.UFF (04/06/04) CR16998 VC



**DOWNEY SAVINGS**
and Loan Association, F.A.

9041680158

# MORTGAGE BROKER FEE DISCLOSURE

You have applied to a mortgage broker, or to a regulated lender or mortgage banker acting in the capacity of a mortgage broker, for purposes of this residential mortgage loan. The mortgage broker will submit your application for a residential mortgage loan to a participating lender with which it from time to time contracts, upon such terms and conditions as you may request or a lender may require. The lenders have asked that this form be furnished to you to clarify the role of mortgage brokers. This form supplements other disclosures or agreements required by law that you should receive from the mortgage broker concerning your application.

**SECTION 1. NATURE OF RELATIONSHIP. In connection with this mortgage loan:**

- In states where the mortgage broker is not required by law to act as your agent, the broker may be acting as an independent contractor and not your agent. If you are unsure of the nature of your relationship, please ask the mortgage broker for clarification.

- The mortgage broker may have separate independent contractor agreements with various lenders.

- While the mortgage broker seeks to assist you in meeting your financial needs, it does not distribute the products of all lenders or investors in the market and cannot guarantee the lowest price or best terms available in the market.

**SECTION 2. THE BROKER'S COMPENSATION. The lenders whose loan products are distributed by the mortgage broker generally provide their loan products to the mortgage broker at a wholesale rate.**

- The retail price the mortgage broker offers you - your interest rate, total points and fees - will include the broker's compensation.

- In some cases, either you or the lender may pay the mortgage broker all of its compensation.

- Alternatively, both you and the lender may pay the mortgage broker all of its compensation. For example, in some cases, if you would rather pay a lower interest rate, you may pay higher up-front points and fees.

- Also, in some cases, if you would rather pay less money up-front, you may wish to have some or all of your fees paid directly by the lender, which will result in a higher interest rate and higher monthly loan payments than you would otherwise be required to pay.

- The mortgage broker also may be paid by the lender based on (1) the value of the mortgage loan or related servicing rights in the market place or (2) other services, goods or facilities performed or provided by the mortgage broker to the lender.

You may work with the mortgage broker to select the method by which it receives its compensation, depending on your financial needs, and subject to the lender's loan program requirements and credit underwriting guidelines.

The amount of fees and charges that you pay in connection with your loan will be estimated on your Good Faith Estimate. The final amount of these charges will be disclosed on your HUD-1 or HUD-1A Settlement Statement.

By signing below, each applicant acknowledges that you have read and understand this document. By your signature, you also acknowledge that you have received a copy of this document.

**APPLICANT(S)**

_____ (Date)         _____ (Date)
HARRY D FISHER          -Borrower                              -Borrower

_____ (Date)         _____ (Date)
                        -Borrower                              -Borrower

_____ (Date)         _____ (Date)
                        -Borrower                              -Borrower

_____ (Date)         _____ (Date)
                        -Borrower                              -Borrower

BRKR-FEE.UFF (06/30/03) CR-7032 VC



---

## PROVIDER OF SERVICE SCHEDULE

**Date:** May 23, 2005

**Re:** 9041680158
**FISHER**

Downey Savings and Loan Association, F.A. has regularly used or required borrower(s) to use the services of the particular providers of real-estate-settlement-related services listed below within the last 12 months. Any additional Providers of Service will be disclosed on the reverse.

### CONSUMER CREDIT REPORTS

Informative Research
13030 Euclid Street
Garden Grove, CA 92843
(800) 955-8914

### TAX SERVICE

LandAmerica National Lender Services
1123 S Parkview Drive
Covina, CA 91724
(818) 332-1942

### APPRAISER

The appraiser for this transaction will be selected from a list of appraisers who have been approved by Downey Savings and Loan Association, F.A. according to the standards set forth in the Financial Institutions Reform Recovery and Enforcement Act (FIRREA). The cost for appraisal of properties similar to the property that is the subject of your application is reflected on the front page of the Good Faith Estimate.

The appraiser selected is: LEGAR, EDWARD K.
1154 SANTA LUCIA DRIVE
PLEASANT HILL, CA 94523
(925)639-7993

### MORTGAGE INSURANCE

If mortgage insurance (MI) is required for your loan request, Downey Savings and Loan Association, F.A. will select an MI company from a list of approved companies.

The MI company selected is:

### FLOOD DETERMINATION/MONITORING

LandAmerica National Lender Services
1123 S Parkview Drive
Covina, CA 91724
(626) 966-0616

1D030-1.UFF (11/18/02) 11889 VC

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Lender: **Downey Savings and Loan Association, F.A.**
3501 Jamboree Road, Newport Beach, CA 92660

Application / Loan Number: 9041680158              Re: **HARRY D FISHER**

Date: **May 23, 2005**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCE | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| **6.139 %** | **$771,255.12** | **$406,381.56** | **$1,177,636.68** |

PAYMENTS: Your payment schedule will be as follows -

| Number of Payments | Amount of Payments | | When Payments Are Due |
|---|---|---|---|
| 1 | $1,071.67 | Monthly Beginning: | 07/01/2005 |
| 11 | $1,071.67 | | 08/01/2005 |
| 12 | $1,152.05 | | 07/01/2006 |
| 12 | $1,238.45 | | 07/01/2007 |
| 7 | $1,331.33 | | 07/01/2008 |
| 436 | $2,578.43 | | 02/01/2009 |
| 1 | $2,575.85 | | 06/01/2045 |

Index Type **12MTA**            Current Index Rate **2.504**

[X] Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit.    [X] Property Insurance    [ ] Flood Insurance
You may obtain the insurance from anyone you want that is acceptable to the creditor.

SECURITY: You are giving a security interest in :
       **2335 Marsh Court, Santa Rosa, CA  95403**

LATE CHARGE: If a payment is more than **15** days late, you will be charged **5.0000** % of the overdue payment.

PREPAYMENT: If you pay off early, you
[X] may    [ ] will not have to pay a penalty.
[ ] may    [X] will not be entitled to a refund of part of the finance charge.

ASSUMPTION: Someone buying your property
[ ] may    [X] may, subject to conditions    [ ] may not assume the remainder of your loan on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

[X]   (e) means an estimate

See attached Good Faith Estimate for settlement charges.
The undersigned acknowledge receiving and reading a completed copy of the disclosure.
Neither you nor the creditor previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.

| | |
|---|---|
| **HARRY D FISHER** _____ (Date) | _____ (Date) |
| _____ (Date) | _____ (Date) |
| _____ (Date) | _____ (Date) |
| _____ (Date) | _____ (Date) |

NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

REZ.UFF (05/10/04) CR12697 RG



# NOTICE OF RIGHT TO CANCEL

LENDER  **Downey Savings and Loan Association, F.A.**
**10021 BLOOMFIELD STREET**
**LOS ALAMITOS, CA 90720**

Date:  May 23, 2005
Loan No:  9041680158
Loan Type:  Conventional

**Property Address:**   2335 Marsh Court, Santa Rosa, CA 95403

You are entering into a transaction that will result in a mortgage on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)  The date of the new transaction, which is **May 24, 2005 \***
or
(2)  The date you received your new Truth in Lending disclosures;
or
(3)  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage on your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may hold any money or property we have given you until we have done the things mentioned above, but you must then return the money or property that we gave you. Money must be returned in full to the address below. With respect to property only; if it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home - or at the location of the property. If we do not take possession of the property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**
If you decide to cancel this transaction, you must notify us in writing at:

Downey Savings and Loan Association, F.A. (Attention: Legal Department)
3501 Jamboree Road
Newport Beach, CA 92660

You may use any written statement that is signed and dated by you and states your intention to cancel, and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight on **May 27, 2005 \*\***

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**  (Sign this _only_ if you wish to cancel your loan.)

| | | | |
|---|---|---|---|
| Signature | Date | Signature | Date |

---

I/We each acknowledge receipt of two completely filled in copies of this <u>NOTICE OF RIGHT TO CANCEL</u>, and one copy of the Federal Truth-in-Lending Act Disclosure Statement.

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective as to all borrowers.

\*  IF THIS DATE IS DIFFERENT FROM THE DATE YOU ARE SIGNING THIS NOTICE AND THE NOTE AND THE DEED OF TRUST OR MORTGAGE, PLEASE CROSS OUT THE INCORRECT DATE, AND INSERT THE DATE OF SIGNING. EACH BORROWER MUST INITIAL THE CHANGE.

\*\*  THIS DATE MUST BE **THREE BUSINESS DAYS** FROM THE DATE SHOWN IN (1), ABOVE. (SEE ATTACHED CALCULATION INSTRUCTIONS.) IF THE DATE IS INCORRECT, PLEASE CROSS IT OUT AND INSERT THE CORRECT DATE. EACH BORROWER MUST INITIAL THE CHANGE.

| | | | |
|---|---|---|---|
| HARRY D FISHER | Date | - | Date |
| | Date | | Date |
| | Date | | Date |
| | Date | | Date |

Right of Rescission (General)

NORTCGEN.UFF (08/31/04) CR22538 VC

## BORROWER INSTRUCTION REGARDING NOTICE OF RIGHT TO CANCEL

YOU MUST MAKE SURE THE DATES ON THE "NOTICE OF RIGHT TO CANCEL" ARE COMPLETED CORRECTLY, AND YOU MUST MAKE SURE THAT THE NOTICE IS PROPERLY SIGNED. If you do not, or if you make a mistake, Lender will require new, redrawn documents to be signed, which could cause the funding to be delayed.

**How to Complete Dates**

(#1) Is the date on which the Note and Mortgage or Deed of Trust are signed. If there are multiple signers who sign on different dates, this date must be determined individually for each signer. If the date printed is incorrect, you may either call for a new form or correct by lining through the incorrect date, writing the correct date, and initialing the change. If you choose to correct the form, the change must be initialed by all persons who sign the Notice of Right to Cancel.

(#2) Is calculated by counting the next 3 days after Date #1. Include Saturdays, but exclude Sundays and federal holidays listed below.

| | |
|---|---|
| New Year's | Jan. 1 |
| King's Birthday | 3rd Mon. in Jan. |
| President's Day | 3rd Mon. in Feb. |
| Memorial Day | Last Mon. in May |
| Independence | July 4 |
| Labor Day | 1st Mon. in Sept. |
| Columbus Day | 2nd Mon. in Oct. |
| Veterans Day | Nov. 11 |
| Thanksgiving | 4th Thurs. in Nov. |
| Christmas | Dec. 25 |

**Examples:**

If Date #1 is a...     Then Date #2 is the date of the following (insert actual date of rescission expirations)...

* Monday with    the following
  no holiday      Thursday's date.

* Friday with    the following
  no holiday      Tuesday's date

* Friday with    the following
  Monday          Wednesday's date
  holiday

(#3) must be signed by each person who has a right to rescind. Each signature must be dated.

Each person who signed the Notice of Right to Cancel must be given two (2) completely filled in copies.

---

### NOTICE OF RIGHT TO CANCEL

LENDER                                Date:
                                      Loan No:
                                      Loan Type:

Property Address:

You are entering into a transaction that will result in a mortgage on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)  The date of the new transaction, which is
                        or
(2)  The date you received your new Truth in Lending disclosures;
                        or
(3)  The date you received this notice of your right to cancel.



If you cancel the transaction, the mortgage is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage on your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may hold any money or property we have given you until we have done the things mentioned above, but you must then return the money or property that we gave you. Money must be returned in full to the address below. With respect to property only, if it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home - or at the location of the property. If we do not take possession of the property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing at



You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight on

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL  (Sign this only if you wish to cancel your loan.)

Signature _____ Date _____     Signature _____ Date _____

I/We each acknowledge receipt of two completely filled in copies of this NOTICE OF RIGHT TO CANCEL, and one copy of the Federal Truth-in-Lending Disclosure Statement.

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective as to all borrowers.

*  IF THIS DATE IS DIFFERENT FROM THE DATE YOU ARE SIGNING THIS NOTICE AND THE NOTE AND THE DEED OF TRUST OR MORTGAGE, PLEASE CROSS OUT THE INCORRECT DATE, AND INSERT THE DATE OF SIGNING. EACH BORROWER MUST INITIAL THE CHANGE.

** THIS DATE MUST BE THREE BUSINESS DAYS FROM THE DATE SHOWN IN (1), ABOVE. (SEE ATTACHED CALCULATION INSTRUCTIONS.) IF THE DATE IS INCORRECT, PLEASE CROSS IT OUT AND INSERT THE CORRECT DATE. EACH BORROWER MUST INITIAL THE CHANGE.

**#3**

Example - Not to be signed _____          Example - Not to be signed _____
                          Date                                      Date

INSTRTCG.UFF (12/10/04) CR26150 VC

# FEDERAL TRUTH-IN-LENDING [  CLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Lender: Downey Savings and Loan Association, F.A.
3501 Jamboree Road, Newport Beach, CA 92660

Application / Loan Number: 9041680158                    Re: HARRY D FISHER

Date: May 23, 2005

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCE | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 6.139 % | $771,255.12 | $406,381.56 | $1,177,636.68 |

PAYMENTS: Your payment schedule will be as follows -

| Number of Payments | Amount of Payments | | When Payments Are Due |
|---|---|---|---|
| 1 | $1,071.67 | Monthly Beginning: | 07/01/2005 |
| 11 | $1,071.67 | | 08/01/2005 |
| 12 | $1,152.05 | | 07/01/2006 |
| 12 | $1,238.45 | | 07/01/2007 |
| 7 | $1,331.33 | | 07/01/2008 |
| 436 | $2,578.43 | | 02/01/2009 |
| 1 | $2,575.85 | | 06/01/2045 |

Index Type 12MTA          Current Index Rate 2.504

[X] Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit.  [X] Property Insurance    [ ] Flood Insurance
You may obtain the insurance from anyone you want that is acceptable to the creditor.

SECURITY: You are giving a security interest in:
2335 Marsh Court, Santa Rosa, CA 95403

LATE CHARGE: If a payment is more than 15 days late, you will be charged 5.0000 % of the overdue payment.

PREPAYMENT: If you pay off early, you
[X] may    [ ] will not have to pay a penalty.
[ ] may    [X] will not be entitled to a refund of part of the finance charge.

ASSUMPTION: Someone buying your property
[ ] may    [X] may, subject to conditions    [ ] may not assume the remainder of your loan on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

[X] (e) means an estimate

See attached Good Faith Estimate for settlement charges.
The undersigned acknowledge receiving and reading a completed copy of the disclosure.
Neither you nor the creditor previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.

| | | | |
|---|---|---|---|
| HARRY D FISHER | (Date) | | (Date) |
| | (Date) | | (Date) |
| | (Date) | | (Date) |
| | (Date) | | (Date) |

NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

REZ.UFF (05/10/04) CR12697 RG



**DOWNEY SAVINGS**
and Loan Association, F.A.

## GOOD FAITH ESTIMATE OF SETTLEMENT CHARGES

Date:              May 23, 2005
Loan Number:       9041680158
Loan Amount:       416,000.00
Loan Program:      A141
Loan Purpose:      Refinance
Loan Type:         Conventional
Property Address:  2335 Marsh Court, Santa Rosa, CA 95403

Borrower(s):  HARRY D FISHER

The information below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.

The HUD-1 or HUD-1A Settlement Statement will show you the actual cost for items paid at settlement.

| Description of Charges | Amount Charged | Amount Paid Outside Closing | Net Due |
|---|---|---|---|
| Credit Report | 12.00 | 0.00 | 12.00 |
| Wire Transfer | 50.00 | 0.00 | 50.00 |
| Underwriting | 325.00 | 0.00 | 325.00 |
| Document | 200.00 | 0.00 | 200.00 |
| Flood Determination | 8.00 | 0.00 | 8.00 |
| Flood Monitoring | 4.00 | 0.00 | 4.00 |
| Tax Service | 56.00 | 0.00 | 56.00 |
| Broker - Origination ( 1.923%) | 7,999.68 | 0.00 | 7,999.68 |
| Broker - Appraisal | 350.00 | 350.00 | 0.00 |
| Broker - Processing | 495.00 | 0.00 | 495.00 |
| Broker - Credit Report | 35.00 | 0.00 | 35.00 |
| Interest of 2 Days @  69.38000 @ 6.004% | 138.76 | 0.00 | 138.76 |
| Settlement or Closing Fee | 550.00 | 0.00 | 550.00 |
| Closing Agent Doc Fee | 125.00 | 0.00 | 125.00 |
| Notary Fee | 25.00 | 0.00 | 25.00 |
| Title Insurance | 1,485.00 | 0.00 | 1,485.00 |
| Closing Agent Fed Ex/Messenger | 35.00 | 0.00 | 35.00 |
| Recording Fees | 88.00 | 0.00 | 88.00 |

**This estimated amount is reflective of a one-year prepaid hazard insurance premium. If this is a refinance loan transaction, we require that any existing hazard insurance policy have at least four (4) months remaining term.

- A Broker Rebate of $12,480.00 ( 3.000%) is being paid by Downey Savings and Loan Association, F.A., to a mortgage broker for this transaction - POC.

**TOTAL ESTIMATED CHARGES  $**          | 11,981.44 |

**(Does not include any adjustments paid through Escrow between the parties to the transaction)**

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information booklet entitled, "Settlement Costs and You", which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property.

2D031-1.UFF 10/10/00 MP 7301

DOW     Y SAVINGS & LOAN ASSOCIATION,  .A.                                    9041680158

### ADJUSTABLE RATE MORTGAGE LOAN PROGRAM DISCLOSURE
### 1 MONTH INITIAL INTEREST RATE PERIOD
### 12 MONTH TREASURY AVERAGE
### POTENTIAL NEGATIVE AMORTIZATION

---

IMPORTANT REAL ESTATE LOAN INFORMATION
PLEASE READ CAREFULLY
SIGN AND RETURN ONE COPY

---

Before applying for an Adjustable Rate Mortgage Loan, it is important for you to understand the difference between this kind of loan and a more traditional fixed rate mortgage loan. This disclosure describes some of the features of an Adjustable Rate Mortgage ("ARM") program offered by Downey Savings and Loan Association, F.A., referred to as "we," "us," or "our," that you are considering. Information on other ARM programs is available upon request.

The interest rate and the monthly payment on the ARM can change. Also, limits on payment increases may result in deferred interest or negative amortization. Because of these and other features of the ARM, you should carefully read this disclosure, the Note, Rider, Deed of Trust and other documents (collectively, the "Loan Documents") you will be asked to sign if we offer a loan to you under this program and you accept it. This disclosure is not a contract or a commitment on our part to make a loan to you on the terms described in this disclosure. However, the Loan Documents, once signed, will be a contract between you and us. The matters discussed in this disclosure are subject to change at any time without notice. Both this disclosure and the Consumer Handbook on Adjustable Rate Mortgages have been provided in compliance with Regulation Z by Downey Savings and Loan Association, F.A.

### GENERAL DESCRIPTION

The interest rate and payment amount for the Loan will not change during the first month. Subject to limitations on the maximum and minimum interest rate, the interest rate for your Loan may change every month after the end of the initial one (1) month period. The rate will be based on an interest rate index plus a margin. Thus, beginning on the first "Interest Change Date" (that is, the date when the first interest rate adjustment is possible), the interest rate applicable at a given time, will depend on the index value and on the size of the margin to be added to the index value. Your monthly payments may be adjusted every year after the end of the initial twelve (12) month period ("Payment-Change Date"), subject to a payment cap described below, except at the end of every fifth year or when the balance of the loan exceeds 110% of your original loan amount, a payment adjustment may be made to adjust your monthly payment to an amount sufficient to fully amortize your loan over the remaining term. This is called "Negative Amortization." Ask us for the negative amortization limit currently being offered for this loan program.

### SPECIFIC DESCRIPTION

HOW YOUR INITIAL INTEREST RATE AND PAYMENT ARE DETERMINED: When you sign your loan note, your initial interest rate will be determined. The "Initial Interest Rate" will not be based upon the index that will be used to make later adjustments. Instead, your interest rate may include either a discount or a premium. Ask us for the amount of any discount or premium and the interest rate currently being offered for this loan program.

Your initial monthly principal and interest payment will be based on the initial interest rate, loan balance and loan term, and will be calculated so that your ARM will be repaid in full by the scheduled maturity date in substantially equal installments, assuming all payments are made on time ("fully amortized").

Frequency of Interest Rate Changes: The interest rate on your loan will be subject to change every month after the end of the initial one (1) month period. Each change will occur on an "Interest Change Date," which Interest Change Dates will be described in your Loan Documents.

Index for Determining Interest Rates: Beginning on your first Interest Change Date, your interest rate will be based upon an index (the "Index") value plus a margin. The Index is the Twelve-Month Average, determined as set forth below, of the monthly yields ("Monthly Yields") on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)." The Twelve-Month Average is determined by adding together the Monthly Yields for the most recent twelve months and dividing by 12. If the Index is no longer available, we will choose a new index based upon comparable information. You will be given notice of that choice. Because the index figure or value is likely to change from time to time throughout your loan term, the interest rate on your loan is likely to change from time to time.

Determining the Interest Rate: Beginning with the interest rate that will become effective as of your first Interest Change Date, the variable interest rate that will apply to your loan until the next Interest Change Date will be determined by adding a specified number of whole or fractional percentage points to the then Current Index. The value of the index 15 days before the "Interest Change" Date is called the "Current Index." The specified number of percentage points to be added to the then Current Index will be shown on your note and is called the "Margin." You should ask us for information about interest rates and Margins for loans currently being offered. This interest rate will become the interest rate applicable until the following Interest Change Date, subject to the two limitations described in the next paragraph.

Your interest rate may never be greater or less than certain percentage points that will be specified in your note. The limitation on increases to your interest rate over the term of the loan is called the "Maximum Interest Rate." The Maximum Interest Rate will be set at an amount in the following range: 9.95% and 14.95%. (This amount is not based on your discounted interest rate). The limitation on decreases to your interest rate over the term of the loan is called the "Minimum Interest Rate." The Minimum Interest Rate will never fall below the Margin. Ask us for the maximum and minimum interest rate limits currently being offered.

### HOW YOUR PAYMENT CAN CHANGE:

Your monthly payment can increase or decrease every year after the initial twelve (12) month period based on increases or decreases, respectively, in the interest rate and outstanding balance, subject to the limitation and two exceptions to the limitation described in the next paragraph. The Payment-Change Dates will be described in the Loan Documents.

Your payment will not increase or decrease by more than 7.50% ("Annual Payment Cap") at each adjustment except at the end of every fifth year when a payment adjustment will be made to adjust your monthly payment to an amount sufficient to fully amortize your loan over its remaining term in substantially equal payments of principal and interest. The payment amount determined at the Payment-Change Date is called the "Minimum Payment." If the minimum payment amount does not pay in full the interest which is due, the unpaid interest is added to the balance of the loan and subsequent payments will be based upon the outstanding balance. This is called "Negative Amortization." Negative Amortization can also occur when the interest rate, which may change monthly after the initial fixed rate period, results in an interest due amount greater than the minimum payment amount. A payment adjustment may also be made whenever your outstanding balance exceeds 110% of your original loan amount. The 7.50% Annual Payment Cap will not apply to such payment adjustment. If the minimum payment amount may be more than what is required to pay the unpaid balance in substantially equal payments of principal and interest, accelerated amortization may occur. Changes in your interest rate during the final five years of your loan may result in the amount of the monthly payments being insufficient to repay the loan over it remaining term. If this happens, then any unpaid balance must be paid in full on the maturity date

Initials _____

9041680158

**Maximum Rate and Payment Example:** Your monthly payment can increase or decrease substantially based on monthly changes in the interest rate.

For example, on a $10,000, 30-year loan with an initial rate of 1.250 percent in effect in March 2004, the maximum amount that the interest rate can rise under this program is 8.770 percentage points, to 9.950 percent, and the monthly payment can rise from a first-year payment of $33.33 to a maximum of $96.79 in the second year. To see what your payment is, divide your mortgage amount by $10,000; then multiply the monthly payment by that amount. (For example, the monthly payment for a mortgage amount of $60,000 would be: $60,000 divided by $10,000 = 6; 6 x $33.33 = $199.98 per month.)

**Notice of Change:** You will be notified in writing at least 25, but no more than 120, days before the due date of the first payment that will be at the new level. This notice will contain information about the current and prior index values on which your current and prior interest rates are based, your current and prior interest rates, new payment amount and loan balance, and if applicable, the extent to which we have forgone any interest rate increase.

## OTHER IMPORTANT PROVISIONS

**Option to Convert to a Fixed-Rate Loan:** Not permitted.

**Due on Sale/Assumption:** If all or any part of the property securing your loan is sold or transferred (or if a beneficial interest in the borrower is sold or transferred and the borrower is not a natural person) without the Note Holder's prior written consent, the Note Holder, may at its option, require immediate payment in full of your loan.

If the indebtedness is not repaid upon demand, the Note Holder may foreclose and sell the property securing the loan. However, the Note Holder will not require immediate payment in full of your loan if doing so would be prohibited by federal law as of the date your loan is closed. In addition, the Note Holder will not require full repayment in connection with any sale or transfer of the property securing the loan if:

1.   You submit to the Note Holder certain information required by the Note Holder to evaluate the creditworthiness of the person(s) to whom you intend to sell or transfer the property;

2.   The Note Holder reasonably determines that its security will not be impaired by the new person(s) assuming payment of the loan and that the risk of breach of any promise or agreement in the loan documents is acceptable to the Lender.

If permitted by applicable law, the Lender may charge a reasonable fee as a condition to the assumption. The Note Holder may also require the person assuming your loan to sign an assumption agreement that is acceptable to the Lender and that obligates that person(s) to keep all of the promises and agreements made in the loan documents unless the Note Holder releases you in writing.

**Origination Fee:** You will be charged fees in connection with the origination of your Adjustable Rate Mortgage loan. There will not be any fees charged at the time of any rate adjustment.

**NOTE:** This information is NOT a contract between you and Downey Savings and Loan Association, F.A. and is solely intended to provide you with an understanding of Downey Savings and Loan Association, F.A.'s loan program. Downey Savings and Loan Association, F.A. reserves the right to make subsequent changes at any time with regard to any matter covered in this disclosure as a result of a change in policy, law, regulation or otherwise. This notice is accurate as of the date of printing.

You hereby acknowledge receipt of a copy of this disclosure and the Consumer Handbook on Adjustable Rate Mortgages.
Date: 05/23/2005

| | | |
|---|---|---|
| _____ (Date) | _____ (Date) |
| HARRY D FISHER           -Borrower | -Borrower |
| _____ (Date) | _____ (Date) |
| -Borrower | -Borrower |
| _____ (Date) | _____ (Date) |
| -Borrower | -Borrower |
| _____ (Date) | _____ (Date) |
| -Borrower | -Borrower |

A141

Page 2 of 2

2D141-2.UFF (03/24/04) CR16888 RG

 **DOWNEY SAVINGS**
and Loan Association, F.A.

# NOTICE OF RIGHT TO CANCEL

LENDER: Downey Savings and Loan Association, F.A.

10021 BLOOMFIELD STREET
LOS ALAMITOS, CA 90720

Date: May 23, 2005
Loan No: 9041680158
Loan Type: Conventional

Property Address: 2335 Marsh Court, Santa Rosa, CA 95403

You are entering into a transaction that will result in a mortgage on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)  The date of the new transaction, which is **May 24, 2005** *

or

(2)  The date you received your new Truth in Lending disclosures;

or

(3)  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage on your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may hold any money or property we have given you until we have done the things mentioned above, but you must then return the money or property that we gave you. Money must be returned in full to the address below. With respect to property only, if it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home - or at the location of the property. If we do not take possession of the property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you must notify us in writing at:

Downey Savings and Loan Association, F.A. (Attention: Legal Department)
3501 Jamboree Road
Newport Beach, CA 92660

You may use any written statement that is signed and dated by you and states your intention to cancel, and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight on **May 27, 2005** **

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.** (Sign this *only* if you wish to cancel your loan.)

| Signature | Date | Signature | Date |
|---|---|---|---|

---

I/We each acknowledge receipt of two completely filled in copies of this <u>NOTICE OF RIGHT TO CANCEL</u>, and one copy of the Federal Truth-in-Lending Act Disclosure Statement.

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective as to all borrowers.

* IF THIS DATE IS DIFFERENT FROM THE DATE YOU ARE SIGNING THIS NOTICE AND THE NOTE AND THE DEED OF TRUST OR MORTGAGE, PLEASE CROSS OUT THE INCORRECT DATE, AND INSERT THE DATE OF SIGNING. EACH BORROWER MUST INITIAL THE CHANGE.

** THIS DATE MUST BE THREE BUSINESS DAYS FROM THE DATE SHOWN IN (1), ABOVE. (SEE ATTACHED CALCULATION INSTRUCTIONS.) IF THE DATE IS INCORRECT, PLEASE CROSS IT OUT AND INSERT THE CORRECT DATE. EACH BORROWER MUST INITIAL THE CHANGE.

| HARRY D FISHER | Date | | Date |
|---|---|---|---|
| | Date | | Date |
| | Date | | Date |
| | Date | | Date |

Right of Rescission (General)

NORTCGEN.UFF (08/31/04) CR22538 VC



9041680158

# DOWNEY SAVINGS & LOAN ASSOCIATION, F.A.
## HAZARD INSURANCE REQUIREMENTS
### (1-4 Family Properties)

The following is provided as a guideline of our minimum insurance requirements when submitting acceptable proof of insurance coverage to Downey Savings and Loan Association, F.A.

**1. INSURER** - The insurer must have a rating in "A.M. Best Company Insurance Reports" of "B" or better in the general policyholder category OR a "6" or better financial performance index rating. If the Best's Insurance Reports - International Edition is used, and "A" or better rating in the general policyholder's category and a financial size category of "VIII" or better is required.

Carriers rated by Demotech, Inc. must have an "A" or better rating in Demotech's "Hazard Insurance Financial Stability Ratings."

Carriers rated by Standard and Poor's Inc. must have either a "BBBq" qualified solvency ratio or a "BBB" or better claims-paying ability rating in Standard and Poor's "Insurer Solvency Review", or a "BBB" or better claims-paying ability rating in Standard and Poor's "International Confidential Rating Service."

**2. NAMED INSURED AND PROPERTY ADDRESS** - The named insured must be the same as Downey Savings and Loan Association, F.A.'s borrower of record. The property address insured must be the same as the property described in the Downey Savings and Loan Association, F.A. Deed of Trust and must appear on the policy.

**3. ORIGINAL POLICY** - The original hazard insurance policy and all endorsements must be sent to Downey Savings and Loan Association, F.A. for all new and renewal policies. Original Certificate of Insurance forms will be accepted for individual condominium units where the condominium project is covered by a master policy, and in addition a copy of the master declaration page must be included. Binders will be accepted as evidence of insurance for coverage under $1,000,000 only, if issued in accordance with California Insurance Code Section 382.5 or its successor. The loan number must appear on all policies or certificates.

**4. TERM** - The policy shall be written for at least four (4) months, or be continuous until cancelled.

**5. PERILS** - The policy (including California Fair Plan and coverage written by Lloyd's of London) shall insure against losses caused by perils including fire, vandalism, malicious mischief, and other perils which are commonly covered in policies described as "standard fire", "extended coverage" and "special form."

**6. DEDUCTIBLE** - The maximum deductible per occurrence may not exceed the greater of $1,000.00 or 1% of the coverage on the dwelling/building, unless otherwise required by governmental regulation or approved by Downey Savings and Loan Association, F.A.

**7. LIMITS** - The amount of coverage we require for a first lien home mortgage is the lesser of - 100% of the insurable value of the improvements (as established by the insurer) OR the unpaid balance of the mortgage as long as it equals the minimum amount - 80% of the insurable value of the improvements - required to compensate for damage or loss on a replacement cost basis.

**8. MORTGAGEE CLAUSE** - The Lender's Loss Payable endorsement (438BFU Endorsement) or approved equivalent must be referred to on the declarations page of the policy. The mortgagee/lender name and address must appear on the declarations page of the policy or by endorsement as follows:

DOWNEY SAVINGS & LOAN ASSOCIATION, F.A., ITS SUCCESSORS AND/OR ASSIGNS
P.O. Box 10438, Van Nuys, CA 91410-0438
(866) 207-0495

**9. FLOOD INSURANCE** - Properties located in special flood hazard areas (SFHA), as identified by federal agencies, must carry a flood insurance policy equal to the LOWER OF the minimum amount required to compensate for any damage or loss on a replacement cost basis (or the loan balance if replacement cost coverage is not available for the type of building insured); OR the maximum insurance available under the appropriate National Flood Insurance Administration (NFIA) program, currently $250,000 per dwelling.

**10. EFFECTIVE DATE; RENEWAL POLICIES** - The initial effective date of any policy of insurance coverage required hereunder must be the same as or prior to the date of loan closing. Any renewal policy must be received in Downey Savings and Loan Association, F.A.'s office at least thirty (30) days prior to the expiration date of the existing policy. A renewal policy must become effective no later than the date the previous policy expires.

**11. NOTICE OF CANCELLATION OR CHANGE IN TERMS** - The policy must provide for a thirty (30) day notice of cancellation or change in coverage limits, terms, or conditions, to be delivered to Downey Savings and Loan Association, F.A. at the address noted in paragraph 8 above.

1D106-1.UFF (01/04/05) CR27004 RG

9041680158

**12. CHANGE OF AGENT** - An authorization signed and dated by the borrower advising Downey Savings and Loan Association, F.A. of borrower's new insurance agent or broker must accompany all replacement policies submitted when

**13. SUBSTITUTION POLICIES** - The borrower may elect to substitute a policy mid-term. However, a substitute policy must meet the requirements stated herein. If allowable, borrower may be asked to remit a fee in connection with the substitution of an insurance policy.

**14. FORCED ORDER COVERAGE** - If any policy required hereunder expires or is cancelled, and Downey Savings and Loan Association, F.A. does not receive a replacement policy or reinstatement by the expiration or cancellation date, Downey Savings and Loan Association, F.A. may obtain from any licensed insurance agency, including one in which Downey Savings and Loan Association, F.A. owns an interest, coverage to protect its interest in the property. This coverage is obtained to protect Downey Savings and Loan Association, F.A.'s interest as mortgagee, not the borrower's interest, and may or may not be comparable to borrower's previous policy. The borrower will be responsible for immediate repayment of any expenses incurred by Downey Savings and Loan Association, F.A. for insurance coverage obtained to protect Downey Savings and Loan Association, F.A.'s interest in the insured property when a lapse in the borrower's coverage occurs. These expenses may be substantially greater than insurance obtained by the borrower.

Please note:

Providing hazard insurance is the borrower's responsibility, and failure to comply with Downey Savings and Loan Association, F.A.'s insurance coverage requirements will delay or prevent the closing of the loan.

Previous acceptance of hazard insurance policies not meeting these minimum requirements shall not constitute a waiver of all or part of these requirements.

Policies not meeting these minimum requirements may be declined by Downey Savings and Loan Association, F.A.

Downey Savings and Loan Association, F.A. reserves the right to revise these minimum requirements from time to time without prior written notice.

HARRY D FISHER _____ (Seal)      _____ (Seal)
                                      -Borrower                        -Borrower

_____ (Seal)      _____ (Seal)
                    -Borrower                        -Borrower

_____ (Seal)      _____ (Seal)
                    -Borrower                        -Borrower

_____ (Seal)      _____ (Seal)
                    -Borrower                        -Borrower



**DOWNEY SAVINGS**
and Loan Association, F.A.

9041680158

## NOTICE TO APPLICANT OF RIGHT TO RECEIVE COPY OF APPRAISAL

YOU HAVE A RIGHT UNDER REGULATION B TO A COPY OF THE APPRAISAL REPORT OBTAINED BY DOWNEY SAVINGS & LOAN ASSOCIATION, F.A. IN SUPPORT OF YOUR APPLICATION FOR CREDIT, PROVIDED THAT YOU HAVE PAID FOR THE APPRAISAL. THE ORIGINAL APPRAISAL IS THE PROPERTY OF DOWNEY SAVINGS & LOAN ASSOCIATION, F.A.. IF YOU WISH TO OBTAIN A <u>COPY</u> OF THE REPORT, PLEASE WRITE TO US AT THE ADDRESS PROVIDED BELOW.

IF YOU SUBMITTED YOUR APPLICATION DIRECTLY TO DOWNEY SAVINGS & LOAN ASSOCIATION, F.A. AND YOU DID NOT PAY FOR THE COST OF THE APPRAISAL, YOU MAY OBTAIN A COPY OF THE APPRAISAL BY SUBMITTING A REQUEST FOR SAME, TOGETHER WITH YOUR CHECK IN AN AMOUNT EQUAL TO THE COST OF THE APPRAISAL TO:

Downey Savings and Loan Association, F.A.

3501 Jamboree Road, Newport Beach, CA 92660

Attn: Loan Servicing, Customer Service

WE MUST HEAR FROM YOU NO LATER THAN 90 DAYS AFTER WE NOTIFY YOU ABOUT THE ACTION TAKEN ON YOUR CREDIT APPLICATION OR YOU WITHDRAW YOUR APPLICATION.

IF YOU SUBMITTED YOUR APPLICATION THROUGH A MORTGAGE BROKER, PLEASE CONTACT THE MORTGAGE BROKER TO OBTAIN A COPY OF THE APPRAISAL.

The undersigned acknowledge(s) receipt of a copy of this Notice.


_____                          _____
HARRY D FISHER                                   Borrower's Email Address

RTRCVAP.UFF (03/15/03) 11889 VC

9041680158

| Additional info for service provider: |
| --- |
| Service: Credit Reporting |
| Phone: |
| Street: |
| City, State ZIP: |

| Additional info for service provider: |
| --- |
| Service: Flood |
| Phone: |
| Street: |
| City, State ZIP: |

| Additional info for service provider: |
| --- |
| Service: Tax Service |
| Phone: |
| Street: |
| City, State ZIP: |

| Additional info for service provider: EDWARD K LEGAR |
| --- |
| Service: Appraisal |
| Phone: (181)888-1780 |
| Street: 1154 SANTA LUCIA DRIVE, |
| City, State ZIP: PLEASANT HILL, CA 54523 |

# LOAN CONDITIONS ADDENDUM

**Date Printed:  05/23/2005**
**Application / Loan Number: 9041680158**
**Property Address: 2335 Marsh Court, Santa Rosa, CA  95403**

******** Downey Savings must receive and approve the following conditions prior to the issuance of loan documents: ********
Estimated hud-1 reflecting all chargesp

******** Downey Savings must receive and approve the following conditions prior to the funding of your loan ********
Complete schedule B (abbreviated item 5,6)
Hazard Insurance with 438 BFU Lender's Loss Payee Endorsement or Equivalent
Broker loan disclosure
Most recent bank statement verifying 4 months reserve
Original Appraisal
Revise schedule of real estate indicating the correct loan amount and payment
Original loan package including 1003 loan application sign by buyer and interviewer
Plat map (prelim)
Certified signed Escrow Instructions (for buyer and sellers if purchase)
Certified copy of Estimate Closing Statement to list providers of service (for buyer & seller if applicable)
Certified copy of signed Escrow Amendment for Lender, rate and terms
Sign and/or date loan application where indicated

******** Lender to provide ********
Flood Certification
Loan Addendum to 1003 completed, signed and dated where indicated

**Fax Number:**    (562)683-2123

1D103-1.UFF (10/07/03) CR-10294 VC

**DOWNEY SAVINGS**
and Loan Association, F.A.

# BROKER DEMAND

Date:     **May 23, 2005**

Attention:     **HARRY D FISHER**

RE:     Escrow Number:          **69804-CV**
          Application/Loan Number:     **9041680158**
          Borrower (s):     **HARRY D FISHER**

Rate: **1.100**          Margin: **3.500**

You are hereby authorized to pay mortgage broker     **EQUITY ONE FINANCIAL**

                                                                                    Name

**23875 VENTURA BLVD #204 CALABASAS, CA 91302**          **(818)224-3781**

     Address                                                                    Phone Number

the amount shown below.  This payment should not be released to the mortgage broker
**UNTIL RECORDING OF THE DEED OF TRUST HAS BEEN CONFIRMED.** Please feel
free to contact me if you should require additional information.

| | |
|---|---|
| Origination | 7,999.68 |
| Discount | |
| Appraisal | |
| Processing | 495.00 |
| Credit Report | 35.00 |
| *Rebate | 12,480.00 |
| *Service Release Premium | |
| 442 Recertification | |
| | |
| | |
| | |

# PLEASE
# SIGN
# and
# FAX  BACK
# to:

**CATHERINE LACEY**

# (562)683-2123

**Total to be paid to mortgage broker $** 21,009.68

This Broker Demand will be used to authorize payment of your final fees and costs.  All costs and fees
must be accurate.  No amounts in excess of those shown on your Broker Demand will be authorized for
payment.  Any changes made after documents are drawn will result in a redraw of loan documents,
redraw fees and possibly rate extension fees.  If questions, contact your Downey Savings funder.

*This amount is not deducted from the borrower's loan proceeds.  This is an additional amount paid by
Downey Savings to the mortgage broker. A facsimile of the signatures shown below is deemed to be
acceptable.

If this loan is paid in full within one hundred and eighty (180) days of the funding date,  Broker agrees to
refund to Downey any and all fees above par pricing paid by Downey to the Broker in this transaction.

**CATHERINE LACEY**          Funder          **EQUITY ONE FINANCIAL**     Mortgage Broker

**CHERYL VAJNAR**          Escrow Officer

Downey Savings and Loan Association, F.A.                    MTGBRKR.UFF (12/22/03) CR13318 VC
10021 BLOOMFIELD STREET   LOS ALAMITOS, CA 90720
(562) 795-1604

9041660158

LENDER:      Downey Savings and Loan Association, F.A.

BORROWER(S): HARRY D FISHER


PROPERTY ADDRESS: 2335 Marsh Court, Santa Rosa, CA  95403

# COMPLIANCE AGREEMENT

**STATE OF**          **CA**

**COUNTY OF**          **Sonoma**

The undersigned borrower(s) for and in consideration of the above referenced Lender funding the closing of this loan agrees, if requested by Lender or Closing Agent for Lender, to fully cooperate and adjust for clerical errors, any or all loan closing documentation if deemed necessary or desirable in the reasonable discretion of Lender to enable Lender to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Federal Housing Authority or the Department of Veteran's Affairs.

The undersigned also understands this loan may be selected as part of an audit and therefore credit information stated on the application will be requested specifically with regard to said loan.  In the event additional verifications of credit information provided on your application are requested,  no additional cost will be incurred by the undersigned.  The undersigned understands the information may be requested from a depository, employer, or any other applicable party who provided the credit information.

Taxpayer hereby consents to the disclosure by the tax return preparer of any and all tax return information contained in the taxpayer's income tax returns (Forms 1040 and Schedules) for the latest two years published, to be used in connection with loan documentation reverification.

The tax return information may not be disclosed or used by the tax return preparer for any purpose other than that permitted by this consent document.

Should information be requested in the event of an audit, the undersigned agrees to fully cooperate with Lender or subsequent Note holder, and authorizes the release of credit information.

The undersigned borrower(s) do hereby so agree and covenant in order to assure that this loan documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Lender of its interest and to said documentation.


| | | |
|---|---|---|
| **HARRY D FISHER**            DATE | | DATE |
| DATE | | DATE |
| DATE | | DATE |
| DATE | | DATE |

comply.uff (03/06/03) 11889 VC


**DOWNEY SAVINGS**
and Loan Association, F.A.

Application / Loan Number: 9041680158

## ADDENDUM TO RESIDENTIAL LOAN APPLICATION

IN ADDITION TO THE ITEMS SET FORTH ON THE RESIDENTIAL LOAN APPLICATION TO WHICH THIS ADDENDUM IS ATTACHED, BORROWER HEREBY APPLIES FOR A LOAN IN ACCORDANCE WITH THE FOLLOWING TERMS:

### I.    Disclaimers

Borrower agrees that the purchase of the real property described herein, and any other transaction in respect thereto entered into by Borrower, is based solely on Borrower's own inspection and opinion as to the value of the property and not upon any inspection, appraisal, representation or promise made by Lender. Borrower expressly waives any claim against Lender arising out of any inspection, appraisal or representation made by Lender.

### II.    All Loan Terms Must Be In Writing

Borrower understands that no person (on behalf of Lender) has the authority to verbally offer or promise any loan terms. Rather, all loan terms must be in writing from Lender to Borrower. Further, Borrower cannot change the loan documents without Lender's written agreement to the change.

### III.    Authorization To Obtain Consumer Report

Borrower has authorized Lender to contact consumer reporting agencies to obtain one or more consumer reports on Borrower, in conjunction with Borrower's loan application. In addition, Borrower authorizes Lender to use the consumer report(s) to determine whether Borrower also qualifies for other loan products that Lender offers, including a home equity line of credit or a home equity loan.

### IV.    Declaration

By signing the loan application and this Addendum, Borrower declares under penalty of perjury that all information provided to Lender about Borrower in the loan application, this Addendum (and any other attachments thereto), is true, complete, and accurate. Borrower understands that Lender is relying on the truthfulness and completeness of such information in processing the application and making the loan requested. Borrower further understands that if Lender discovers that any such information is inaccurate in any material respect, as determined solely by Lender, then Lender may choose to not make the loan requested or, if the inaccuracy is not discovered until after the loan is made, then Lender may declare the loan to be in default and require immediate repayment of the entire loan plus all fees and charges due under the loan documents.

_____          _____
HARRY D FISHER                                                        Date

                                                                                    _____
                                                                                    Date

2D097-1.UFF (12/30/03) 12866 BT

# ADJUSTABLE RATE NOTE
### (12-Month Treasury Average Index)
### (Payment and Rate Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

| May 23, 2005 | VAN NUYS | CA |
|---|---|---|
| [Date] | [City] | [State] |

**2335 Marsh Court, Santa Rosa, CA  95403**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  416,000.00                                    (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is **Downey Savings and Loan Association, F.A.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid.  Until the first day of the calendar month that immediately precedes the first payment date set forth in Section 3(A) below, I will pay interest at a yearly rate of **6.004** %.  Thereafter, until the first Interest Change Date (as defined in Section 2(B) below), I will pay interest at a yearly rate of **1.100** %.  The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B) Interest Change Dates

The interest rate I will pay may change on the first day of                **July**                ,                **2005**                , and on that day every month thereafter.  Each date on which my interest rate could change is called an "Interest Change Date."  The new rate of interest will become effective on each Interest Change Date.

### (C) Interest Rate Limit

My interest rate will never be greater than                **11.050**                %.

### (D) Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index.  The "Index" is the Twelve-Month Average, determined as set forth below, of the monthly yields ("Monthly Yields") on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)."  The Twelve-Month Average is determined by adding together the Monthly Yields for the most recent twelve months and dividing by 12.

The most recent Index figure available as of 15 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

### (E) Calculation of Interest Rate Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **three and one-half**                                        percentage point(s) (**3.500**                %) to the Current Index.  Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Change Date.

**9041680158**

MULTI STATE ADJUSTABLE RATE NOTE - MTA Index - Single Family
I141N1.UFF (07/22/04) CR20711 RG                     Page 1 of 4                     Initials:_____                     1/01

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **July 1 2005**. I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before Principal. If, on **June 1, 2045**, I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 6060, 3501 Jamboree Rd, Newport Beach, CA 92658-6060** or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be U.S. $ **1,071.67**. This amount may change.

**(C) Monthly Payment Changes**

My monthly payment may change as required by Section 3(D) below beginning on the first day of **July 2006**, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. The Note Holder also will add interest on the amount of this difference to my unpaid Principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to one hundred **ten** percent ( **110** %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that maximum due to the limited payments and interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date at my current interest rate in substantially equal payments.

**(G) Required Full Payment**

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

## 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

9041680158

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of         Fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be                 5.000                             % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**9041680158**

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| HARRY D FISHER            -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

[Sign Original Only]

**9041680158**

I141N4.UFF 10/16/2002 11215 JS                Page 4 of 4                Initials:_____    1/01

# RIDER TO PROMISSORY NOTE AND SECURITY INSTRUMENT

Loan Number: 9041680158                    Date: **May 23, 2005**

Property Address: **2335 Marsh Court, Santa Rosa, CA 95403**

FOR VALUE RECEIVED, the undersigned (collectively, the Borrower) agrees that the following shall be incorporated into that certain deed of trust of even date herewith and any riders thereto (collectively, the Security Instrument) executed by Borrower, as trustor, in favor of Downey Savings and Loan Association, F.A. (the Lender) as beneficiary, and also into that certain promissory note and any riders thereto (collectively, the Note) of even date herewith executed by Borrower in favor of Lender. The Lender or anyone who takes the Note by transfer and who is entitled to receive payments under the Note is referred to in the Note as the Note Holder. To the extent that the provisions of this Rider to Promissory Note and Security Instrument (the Rider) are inconsistent with the provisions of the Security Instrument and/or the Note, the provisions of this Rider shall prevail and shall supersede any such inconsistent provisions of the Security Instrument and/or the Note. The performance of the provisions of this Rider shall be secured by the Security Instrument.

If the Federal Home Loan Mortgage Corporation (FHLMC), the Federal National Mortgage Association (FNMA) or any other investor buys all or some of Lender's rights under the Security Instrument and the Note, the provisions and agreements contained in this Rider, may, at the investor's discretion, no longer have any force or effect. If thereafter the FHLMC or FNMA or any other investor should retransfer the Security Instrument and Note to the Lender or Lender's successor in interest, the provisions and agreements in this Rider shall thereupon be reinstated without the need for any additional writing or document.

1. LATE CHARGES and ACCRUED INTEREST.

In the event any installment is not received by the Note Holder within fifteen (15) days after its due date, Borrower shall pay to the Note Holder a late charge in an amount equal to **SIX**

percent (   **6.000%**) of the installment due that is applicable to the payment of principal and interest, or $5.00, whichever is greater. If the fifteen day period ends on a weekend or a holiday, such period is extended to the next business day. Borrower acknowledges that it would be difficult and impractical to fix Note Holder's actual damages arising out of any late payment and that the foregoing late payment charge is a reasonable estimate of the same and shall be presumed to be the actual amount. The provisions of this paragraph shall not limit the Note Holder's right, under the Security Instrument or otherwise, to compel prompt performance under the Note. Upon default, accrued and unpaid interest shall further bear interest at the then applicable interest rate until paid.

Payments for this loan are due on the 1st of each month and a late charge will be assessed if payments are not received by the 16th of each month. If sufficient funds are not available when Note Holder attempts to debit Borrower's loan payment from Borrower's designated checking account, a "returned item charge" will be assessed.

2. INTEREST ON PAST DUE SUMS.

Should any sum due hereunder, including accumulated interest, not be paid in accordance with the terms of the Note, the sums not paid shall bear interest at the same rate as the principal, or to the maximum rate allowed by law, whichever is less.

1D107-1.UFF (12/10/04) CR25897 VC

9041680158

3. ACCELERATION; REMEDIES.

If any monthly installment, including late charges, under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other deed of trust or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice and regardless of any prior forbearance. In such event, Lender, at its option, may then or thereafter deliver to the Trustee a written declaration of default and demand for sale and shall cause to be filed of record a written notice of default and of election to cause to be sold the Property. Lender shall also deposit with the Trustee this Security Instrument and any notes and all documents evidencing expenditures secured thereby. After the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, the Trustee, without demand on Borrower, shall sell the Property at the time and place specified by such Trustee in such notice of sale, or at the time to which such noticed sale has been duly postponed, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, except that Lender may offset its bid to the extent of the amount owing to it under the Note and this Security Instrument, including the Trustee's fee and expenses. The Trustee may sell the Property as a whole or in separate parcels if there is more than one parcel, subject to such rights as Borrower may have by law to direct the manner or order of sale, or by such other manner of sale which is authorized by law. The Trustee may postpone the time of sale of all or any portion of the Property by public declaration made by the Trustee at the time and place last appointed for sale. The Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recital in such deed of any matters of fact shall be conclusive proof of the truthfulness thereof.

Any person, including Borrower, the Trustee or Lender may purchase at such sale. After deducting all costs, fees and expenses of the Trustee, and of this Security Instrument, including costs of evidence of title in connection with such sale, the Trustee first shall apply the proceeds of sale to payment of all sums expended under the terms of this Security Instrument not then repaid, with accrued interest at the rate then payable under the Note or Notes secured thereby, and then to payment of all other sums secured thereby and, if thereafter there be any proceeds remaining, shall distribute them to the person or persons legally entitled thereto.

4. HAZARD OR PROPERTY INSURANCE.

Unless Lender and Borrower otherwise agree in writing, any insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as it may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, the Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

If Borrower obtains earthquake insurance, and other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder and (ii) be subject to the provisions of this paragraph 4 hereof with respect to insurance proceeds.

Lender may charge a reasonable fee for the cost of determining whether the building or mobile home securing a loan is located in an area having special flood hazards, subject to applicable law.

1D107-2.UFF (12/10/04) CR25897 VC

9041680158

5. BORROWER'S RIGHT TO PREPAY.

Borrower may make payments of principal at any time. A payment of principal only prior to the Maturity Date (beyond the principal included in the regular monthly payments) is known as a 'Prepayment.' When Borrower makes a Prepayment, Borrower must tell Lender in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly principal and interest payments due under the Note.

Borrower may make a full Prepayment or qualifying partial Prepayment(s) as long as Borrower pays the Prepayment charge described below. The Prepayment charge shall be equal to six (6) months' advance interest on any Prepayment(s) made in any twelve (12) month period in excess of twenty percent (20%) of the original principal amount of the Note, at the interest rate in effect under the Note as of the date of each Prepayment. There will be no Prepayment charge for Prepayment(s) made more than three (3) years after the date of the Note. If the Note is an Adjustable Rate Note, the fully indexed interest rate in effect under such Note (i.e. the margin plus the index as defined in such Note), as of the date of any such Prepayment, subject to any interest rate limit set forth in such Note and without regard to temporary interest rate reductions, will be used to calculate the Prepayment charge.

The Prepayment charge shall be due whether a Prepayment is voluntary or involuntary, including upon Lender's acceleration of the entire amount due under the Note (within three years after the date of the Note) because of a default.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Rider to Promissory Note and Security Instrument.

_____ (Seal)      _____ (Seal)
HARRY D FISHER              -Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
                           -Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
                           -Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
                           -Borrower                              -Borrower

Page 3 of 3                    1D107-3.UFF (12/10/04) CR25897 VC

Recording Requested By:
**Downey Savings and Loan**
**Association, F.A.**
Return To:
**Downey Savings and Loan**
**Association, F.A.**
**P.O. Box 6060, 3501 Jamboree**
**Rd, Newport Beach, CA**
**92658-6060**

Prepared By:
**Downey Savings and Loan**
**Association, F.A.**
**P.O. Box 6060, 3501 Jamboree Rd,**
**Newport Beach, CA 92658-6060**

————————————————————[Space Above This Line For Recording Data]————————————————————

# DEED OF TRUST

**Title Order No.: 39104442**
**Escrow No.: 69804-CV**
**APN:**

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **May 23, 2005**
together with all Riders to this document.
(B) **"Borrower"** is **HARRY D FISHER, An Unmarried Man**

Borrower's address is **2335  Marsh Court, Santa Rosa CA 95403**
. Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is **Downey Savings and Loan Association, F.A.**

Lender is a **federally chartered savings association**
organized and existing under the laws of **the United States of America**

**9041680158**

*CALIFORNIA*-Single Family-*Fannie Mae/Freddie Mac UNIFORM INSTRUMENT*          *Form 3005  1/01*

**VMP**® -6(CA) (0207)
Page 1 of 15                    Initials:_____

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is **3501 Jamboree Road, Newport Beach, CA   92660**

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is **DSL Service Company, A California Corporation**

(E) "Note" means the promissory note signed by Borrower and dated **May 23, 2005**
The Note states that Borrower owes Lender **four hundred sixteen thousand and 00/100**
Dollars
(U.S. $ **416,000.00**            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **June 1, 2045**             .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |

**Rider to Promissory Note and Security
Instrument**

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

**9041680158**

Initials:_____

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| County | of | Sonoma | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

**Legal Description attached hereto and made a part hereof**

Parcel ID Number:                                                    which currently has the address of
**2335 Marsh Court**                                                                          [Street]
**Santa Rosa**                                    [City], California 95403        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

9041680158

VMP®-6(CA) (0207)                    Page 3 of 15        Initials:_____        Form 3005   1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

9041680158

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

9041680158

Initials:_____

 -6(CA) (0207)                    Page 6 of 15                    **Form 3005  1/01**

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

9041680158

 -6(CA) (0207)                     Page 7 of 15     Initials:_____      Form 3005  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

9041680158

Initials: _____

VMP ®-6(CA) (0207)     Page 8 of 15     Form 3005  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

9041680158

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

9041680158

Initials: _____

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

9041680158



requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

9041680158

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          HARRY D FISHER                -Borrower


_____          _____ (Seal)
                                                                       -Borrower


_____ (Seal)   _____ (Seal)
                               -Borrower                               -Borrower


_____ (Seal)   _____ (Seal)
                               -Borrower                               -Borrower


_____ (Seal)   _____ (Seal)
                               -Borrower                               -Borrower


9041680158

VMP -6(CA) (0207)          Page 14 of 15          Form 3005  1/01

State of California
County of                                                } ss.

On                              before me,

                                                              personally appeared

HARRY D FISHER

                                                              , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                              _____ (Seal)


                                                              **9041680158**

Initials:_____

-6(CA) (0207)                    Page 15 of 15                    *Form 3005  1/01*

# RIDER TO PROMISSORY NOTE AND SECURITY INSTRUMENT

Loan Number: **9041680158**                    Date: **May 23, 2005**

Property Address: **2335 Marsh Court, Santa Rosa, CA  95403**

FOR VALUE RECEIVED, the undersigned (collectively, the Borrower) agrees that the following shall be incorporated into that certain deed of trust of even date herewith and any riders thereto (collectively, the Security Instrument) executed by Borrower, as trustor, in favor of Downey Savings and Loan Association, F.A. (the Lender) as beneficiary, and also into that certain promissory note and any riders thereto (collectively, the Note) of even date herewith executed by Borrower in favor of Lender. The Lender or anyone who takes the Note by transfer and who is entitled to receive payments under the Note is referred to in the Note as the Note Holder. To the extent that the provisions of this Rider to Promissory Note and Security Instrument (the Rider) are inconsistent with the provisions of the Security Instrument and/or the Note, the provisions of this Rider shall prevail and shall supersede any such inconsistent provisions of the Security Instrument and/or the Note. The performance of the provisions of this Rider shall be secured by the Security Instrument.

If the Federal Home Loan Mortgage Corporation (FHLMC), the Federal National Mortgage Association (FNMA) or any other investor buys all or some of Lender's rights under the Security Instrument and the Note, the provisions and agreements contained in this Rider, may, at the investor's discretion, no longer have any force or effect. If thereafter the FHLMC or FNMA or any other investor should retransfer the Security Instrument and Note to the Lender or Lender's successor in interest, the provisions and agreements in this Rider shall thereupon be reinstated without the need for any additional writing or document.

1. LATE CHARGES and ACCRUED INTEREST.

In the event any installment is not received by the Note Holder within fifteen (15) days after its due date, Borrower shall pay to the Note Holder a late charge in an amount equal to **SIX** percent (   **6.000%**) of the installment due that is applicable to the payment of principal and interest, or $5.00, whichever is greater. If the fifteen day period ends on a weekend or a holiday, such period is extended to the next business day. Borrower acknowledges that it would be difficult and impractical to fix Note Holder's actual damages arising out of any late payment and that the foregoing late payment charge is a reasonable estimate of the same and shall be presumed to be the actual amount. The provisions of this paragraph shall not limit the Note Holder's right, under the Security Instrument or otherwise, to compel prompt performance under the Note. Upon default, accrued and unpaid interest shall further bear interest at the then applicable interest rate until paid.

Payments for this loan are due on the 1st of each month and a late charge will be assessed if payments are not received by the 16th of each month. If sufficient funds are not available when Note Holder attempts to debit Borrower's loan payment from Borrower's designated checking account, a "returned item charge" will be assessed.

2. INTEREST ON PAST DUE SUMS.

Should any sum due hereunder, including accumulated interest, not be paid in accordance with the terms of the Note, the sums not paid shall bear interest at the same rate as the principal, or to the maximum rate allowed by law, whichever is less.

1D107-1.UFF (12/10/04) CR25897 VC

9041680158

## 3. ACCELERATION; REMEDIES.

If any monthly installment, including late charges, under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other deed of trust or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice and regardless of any prior forbearance. In such event, Lender, at its option, may then or thereafter deliver to the Trustee a written declaration of default and demand for sale and shall cause to be filed of record a written notice of default and of election to cause to be sold the Property. Lender shall also deposit with the Trustee this Security Instrument and any notes and all documents evidencing expenditures secured thereby. After the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, the Trustee, without demand on Borrower, shall sell the Property at the time and place specified by such Trustee in such notice of sale, or at the time to which such noticed sale has been duly postponed, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, except that Lender may offset its bid to the extent of the amount owing to it under the Note and this Security Instrument, including the Trustee's fee and expenses. The Trustee may sell the Property as a whole or in separate parcels if there is more than one parcel, subject to such rights as Borrower may have by law to direct the manner or order of sale, or by such other manner of sale which is authorized by law. The Trustee may postpone the time of sale of all or any portion of the Property by public declaration made by the Trustee at the time and place last appointed for sale. The Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recital in such deed of any matters of fact shall be conclusive proof of the truthfulness thereof.

Any person, including Borrower, the Trustee or Lender may purchase at such sale. After deducting all costs, fees and expenses of the Trustee, and of this Security Instrument, including costs of evidence of title in connection with such sale, the Trustee first shall apply the proceeds of sale to payment of all sums expended under the terms of this Security Instrument not then repaid, with accrued interest at the rate then payable under the Note or Notes secured thereby, and then to payment of all other sums secured thereby and, if thereafter there be any proceeds remaining, shall distribute them to the person or persons legally entitled thereto.

## 4. HAZARD OR PROPERTY INSURANCE.

Unless Lender and Borrower otherwise agree in writing, any insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as it may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, the Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

If Borrower obtains earthquake insurance, and other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder and (ii) be subject to the provisions of this paragraph 4 hereof with respect to insurance proceeds.

Lender may charge a reasonable fee for the cost of determining whether the building or mobile home securing a loan is located in an area having special flood hazards, subject to applicable law.

9041680158

5. BORROWER'S RIGHT TO PREPAY.

Borrower may make payments of principal at any time. A payment of principal only prior to the Maturity Date (beyond the principal included in the regular monthly payments) is known as a 'Prepayment.' When Borrower makes a Prepayment, Borrower must tell Lender in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly principal and interest payments due under the Note.

Borrower may make a full Prepayment or qualifying partial Prepayment(s) as long as Borrower pays the Prepayment charge described below. The Prepayment charge shall be equal to six (6) months' advance interest on any Prepayment(s) made in any twelve (12) month period in excess of twenty percent (20%) of the original principal amount of the Note, at the interest rate in effect under the Note as of the date of each Prepayment. There will be no Prepayment charge for Prepayment(s) made more than three (3) years after the date of the Note. If the Note is an Adjustable Rate Note, the fully indexed interest rate in effect under such Note (i.e. the margin plus the index as defined in such Note), as of the date of any such Prepayment, subject to any interest rate limit set forth in such Note and without regard to temporary interest rate reductions, will be used to calculate the Prepayment charge.

The Prepayment charge shall be due whether a Prepayment is voluntary or involuntary, including upon Lender's acceleration of the entire amount due under the Note (within three years after the date of the Note) because of a default.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Rider to Promissory Note and Security Instrument.

| | |
|---|---|
| _____(Seal) | _____(Seal) |
| HARRY D FISHER        -Borrower | -Borrower |
| | |
| _____(Seal) | _____(Seal) |
| -Borrower | -Borrower |
| | |
| _____(Seal) | _____(Seal) |
| -Borrower | -Borrower |
| | |
| _____(Seal) | _____(Seal) |
| -Borrower | -Borrower |

1D107-3.UFF (12/10/04) CR25897 VC

# ADJUSTABLE RATE RIDER
### (12-Month Treasury Average Index)
### (Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **23rd** day of **May** , **2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
**Downey Savings and Loan Association, F.A.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**2335 Marsh Court, Santa Rosa, CA  95403**

[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

## 2. INTEREST
### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Until the first day of the calendar month that immediately precedes the first payment date set forth in Section 3(A) below, I will pay interest at a yearly rate of **6.004 %**. Thereafter, until the first Interest Change Date (as defined in Section 3(C) below), I will pay interest at a yearly rate of **1.100 %**. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

9041680158

**(B) Interest Change Dates**

The interest rate I will pay may change on the first day of **July**, **2005**, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

**(C) Interest Rate Limit**

My interest rate will never be greater than **11.050** %.

**(D) Index**

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the monthly yields ("Monthly Yields") on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)." The Twelve-Month Average is determined by adding together the Monthly Yields for the most recent twelve months and dividing by 12.

The most recent Index figure available as of 15 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **three and one-half** percentage point(s) **3.500** % to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Change Date.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **July 1**, **2005**. I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before Principal. If, on **June 1, 2045**, I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 6060, 3501 Jamboree Rd, Newport Beach, CA 92658-6060**

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be U.S. $ **1,071.67**. This amount may change.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first day of **July**, **2006**, and on that day every 12th month thereafter. Each of these

9041680158

dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. The Note Holder also will add interest on the amount of this difference to my unpaid Principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to one hundred **ten**

percent ( **110** %)

of the Principal amount I originally borrowed. My unpaid Principal could exceed that maximum amount due to the limited payments and interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date at my current interest rate in substantially equal payments.

**(G) Required Full Payment**

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

**4: NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be

9041680158

given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

9041680158

I141R4.UFF (01/12/2001) 7970 VC          Page 4 of 5          Initials:_____     1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
HARRY D FISHER              -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

[Sign Original Only]
9041680158

I141R5.UFF (05/09/03) CR-2054 VC          Page 5 of 5          Initials:_____    1/01

## BORROWER ACKNOWLEDGMENT and INSTRUCTIONS

**TO: Downey Savings and Loan Association, F.A.**

**FROM: Undersigned Borrower(s)**

**RE: Loan No.: 9041680158**

_____

Each of the undersigned ("Borrower") acknowledges receipt of loan documents from Downey Savings and Loan Association, F.A. ("Lender"), in conjunction with the referenced loan application.

Borrower understands that Lender's loan approval is subject to certain conditions, and that the loan documents have been provided at this time with the intent of expediting the loan process. Borrower further understands and agrees that Borrower's receipt and execution of the loan documents do not constitute loan approval by Lender nor a commitment by Lender to approve and/or fund the requested loan.

Enclosed are the loan documents, executed by Borrower. Lender is authorized and instructed to use the loan documents only at such time as all loan conditions have been satisfied and Lender is ready to fund the loan. Should the loan not fund, for whatever reason, the loan documents shall be deemed null and void.

**Borrower(s):**


_____ (Date)          _____ (Date)
HARRY D FISHER                        -Borrower                                                -Borrower


_____ (Date)          _____ (Date)
                                     -Borrower                                                -Borrower


_____ (Date)          _____ (Date)
                                     -Borrower                                                -Borrower


_____ (Date)          _____ (Date)
                                     -Borrower                                                -Borrower


BWACKINS.UFF CR14077 (01/20/04) RG

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA<br>CIVIL DIVISION<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878<br>(707) 521-6500<br>www.sonomasuperiorcourt.com | (FOR COURT USE ONLY)<br><br>ENDORSED<br>FILED<br>APR 8 - 2008<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SONOMA |
|---|---|
| **NOTICE OF ASSIGNMENT TO ONE JUDGE FOR ALL PURPOSES,<br>NOTICE OF CASE MANAGEMENT CONFERENCE,<br>and ORDER TO SHOW CAUSE** | Case number:<br>SCV 242671 |

## A COPY OF THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT AND WITH ANY CROSS-COMPLAINT

### MARK TANSIL

1. **THIS ACTION IS ASSIGNED TO HON. _____ FOR ALL PURPOSES.**
   Pursuant to California Rules of Court, Rule 2.111(7), the assigned judge's name must appear below the number of the case and the nature of the paper on the first page of each paper presented for filing.

2. A Case Management Conference has been set at the time and place indicated below:

| Date:<br>Location:     1450 Guerneville Road<br>AUG 1 1 2008 Santa Rosa, CA 95403 | Time: 9:00 am | Courtroom: 1 8 |
|---|---|---|

3. No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement [Judicial Council form #CM-110] and serve it on all other parties in the case.  In lieu of each party's filing a separate case management statement, any two or more parties may file a joint statement.

4. At the conference, counsel for each party and each self-represented party must appear personally or by telephone [California Rules of Court, Rule 3.670(c)(2)]; must be familiar with the case; and must be prepared to discuss and commit to the party's position on the issues listed in California Rules of Court, Rule 3.727.

5. Pre-approved dispositions are recorded three (3) court days prior to the case management conference.  These may be obtained by calling (707) 521-6883 or by going to http://www.sonomasuperiorcourt.com/tentative/index.php.

### ORDER TO SHOW CAUSE

To Plaintiff(s), Cross-complainants, and/or their attorneys of record:

If, on the date shown above, you are not in compliance with timely filing requirements stated in California Rules of Court, Rules 3.110 and/or 3.725, you must then and there show cause why this Court should not impose monetary and/or terminating sanctions.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address) | | FOR COURT USE ONLY |
|---|---|---|
| TELEPHONE NO.:                         FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA**<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878 | | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | | |

| | **ADR INFORMATION SHEET**<br>[Sonoma County Superior Court Rules, Rule 16] | CASE NUMBER: |
|---|---|---|
| (Check one):    ☐   **UNLIMITED CASE**<br>(Amount demanded exceeds $25,000) | ☐   **LIMITED CASE**<br>(Amount demanded is $25,000 or less) | Date:<br>Time:<br>Location:<br>Assigned Judge: |

## NOTICE TO ALL PARTIES AND THEIR ATTORNEYS

The policy of the Sonoma County Superior Court is:

"The formal litigation of legal claims and disputes is expensive and time consuming. The overall results achieved by some or all of the parties are often unsatisfactory. There are many modern alternatives to formal court litigation which are less expensive, less time consuming, and more beneficial to the parties. It is therefore the firm policy and goal of this court to encourage the parties in all civil cases to explore and pursue private dispute resolution alternatives at the earliest possible date." (Local Rule 16.1.)

Although most (90-98%) cases do settle, many settlements come only after a considerable amount of time, money, and resources have been expended. Such expenditures, as well as the adversarial nature of litigation, can be a disincentive to settlement. The Sonoma County Superior Court encourages the use of Alternative Dispute Resolution (ADR) as early as possible after the parties become aware of a dispute.

Most ADR processes are voluntary and are paid for by the parties themselves, but ADR has proved in many cases to be faster, cheaper, and more effective than traditional litigation.

## ADVANTAGES OF ADR:

The filing of your complaint or answer may be just the beginning of the costs that you will incur during the course of your lawsuit. Lawsuits can be extremely costly. By utilizing ADR methods early in the course of your case, you may significantly reduce these costs by either resolving the case before expensive discovery and trial proceedings are commenced or by narrowing the scope of your discovery by identifying disputed and undisputed factual and legal issues.

ADR can be a fast, economical, efficient, and effective way to resolve civil cases, and most litigants report satisfaction with the process. ADR procedures can be scheduled at your convenience and can be completed in a fraction of the time required for traditional litigation. The cost of ADR will depend on the procedure and the provider you select, and the cost is typically less than litigation.

Most ADR processes are confidential but can result in enforceable agreements. Many ADR processes will give you an opportunity to test the strengths and weaknesses of your case without adverse impact in the event of a trial. Depending upon the method of ADR you select, it may be the last chance for you to control the outcome of your dispute before you place the decision in the hands of a judge or jury.

## METHODS OF ADR:

**A. MEDIATION:** Mediation is one of the most frequently used methods of ADR because it is informal, quick, convenient and confidential. In this process the parties select a neutral mediator who facilitates the identification of issues and areas of agreement and assists in finding a resolution or settlement of the dispute. Since mediation requires the agreement of the parties to resolve the matter, control of the proceedings and a determination of the settlement terms remains completely in the parties' hands. The mediator remains neutral and assists the parties in arriving at terms that are mutually agreeable.

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**B. ARBITRATION:** The parties jointly employ a neutral third party or a panel of neutrals to listen to both sides and render a decision. The parties are free to make the arbitrator's decision binding or non-binding. When non-binding, the arbitrator's decision serves as guide or influence upon the parties to bring them closer to settlement. If it is binding, the decision of the arbitrator will be final and generally avoids any further proceedings in the case. Non-binding judicial arbitration may be ordered in certain cases before trial.

**C. EARLY NEUTRAL EVALUATION:** A neutral evaluator is hired by the parties to give an evaluation of the case to help settle it. You or your attorney will be permitted to prepare a written statement, present critical witnesses or other evidence, argue your case to the evaluator, meet separately and confidentially with the evaluator, and utilize the evaluator to communicate any settlement offers to the opposing party.

**D. PRIVATE SETTLEMENT CONFERENCE:** A voluntary settlement conference is similar to early neutral evaluation in that the parties employ a neutral settlement officer who attempts to persuade the parties to accept a compromise position. It is a form of facilitated negotiation in which the settlement officer may express an opinion about the value of the case, the substantive merits of each party's position, and the probable outcome of the trial.

There are various other methods or combinations of methods of ADR, such as summary jury trial, mini-trial, special master and discovery referee. The court encourages the parties to be creative in selecting the process which has the best chance of resolving the case as quickly, effectively, and inexpensively as possible. You will have a chance to review your ADR options at the time of the Early Mediation and Case Management Conference.

**The undersigned party is willing to agree to any of the following forms of ADR at this time (for family law and probate actions only). Your selection will inform the other parties in the case of your current thoughts regarding the use of ADR. If all parties agree on a particular ADR method, you will be asked to file a stipulation on the court's form. The stipulation form (Sonoma County Superior Court form #MISC-101) can be found at the court's web site and is available at the court.)**

| | | | |
|---|---|---|---|
| ☐ | Mediation | ☐ | Early Neutral Evaluation |
| ☐ | Non-binding Private Arbitration | ☐ | Binding Private Arbitration |
| ☐ | Voluntary Settlement Conference | ☐ | Summary Jury Trial |
| ☐ | Other _____ | ☐ | Judicial Arbitration |

I / We certify that I / We have read and understood (or have had explained to me / us) the foregoing.

Date: _____        _____
                                                                 Signature of Party

Date: _____        _____
                                                                 Signature of Party

Date: _____        _____
                                                        Signature of Attorney for Party
                                       ☐  Additional signatures are attached

**NOTE: This form requires the signatures of the parties and their attorney. All parties must complete, file and serve this form in accordance with Sonoma County Superior Court Rules, Rule 16. See Rule 16.3 for specific filing and service instructions.**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                          FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA**<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |

| **STIPULATION AND ORDER REFERRING MATTER TO ALTERNATIVE DISPUTE RESOLUTION** | CASE NUMBER: |
|---|---|
| (Check one):   ☐  **UNLIMITED CASE**<br>(Amount demanded exceeds $25,000)     ☐  **LIMITED CASE**<br>(Amount demanded is $25,000 or less) | Date:<br>Time:<br>Location:<br>Assigned Judge: |

The parties hereby stipulate to refer the case to the following Alternate Dispute Resolution Process:

☐  Mediation                           ☐  Non-binding Private Arbitration
☐  Binding Private Arbitration         ☐  Private Settlement Conference
☐  Early Neutral Evaluation            ☐  Judicial Arbitration

The ADR process will be conducted by  (name of individual):  _____

Provider's Address:  _____

Provider's Telephone:  _____   Fax:  _____   E-mail address:  _____
☐ No agreement

The ADR process will be conducted on (date):  _____.
☐ No agreement

☐    The parties have reached agreement as to the payment of fees of ADR provider.
☐    The parties have not reached agreement as to the payment of fees of ADR provider.

_____
Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

_____
**(Date and Sign)** Attorney or party without attorney (Sign in blue ink)

_____
Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

_____
**(Date and Sign)** Attorney or party without attorney (Sign in blue ink)

☐    Additional signatures are attached

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

## ORDER

**A REVIEW HEARING IS SCHEDULED AS FOLLOWS:**

_____        _____
                    Date                                              Time

All parties must appear at the Review Hearing. In the event that the case is settled and a dismissal, a notice of settlement or a judgment is filed at least 3 court days before the scheduled Review Hearing, the Review Hearing will be dropped and no one should appear. You must check the phone message at _____or go to http://www.SonomaSuperiorCourt.com/tentative/index.html where the tentative dispositions will be posted the day before you are scheduled to come to court to determine if you must appear.

_THE FIRST ATTORNEY OR PARTY LISTED  MUST FILE PROOF OF SERVICE OF A COPY OF THIS ORDER ON ALL PARTIES._

_____        _____
                    Date                                   JUDGE OF THE SUPERIOR COURT

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *FOR COURT USE ONLY* |
|---|---|

TELEPHONE NO.:                    FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
  STREET ADDRESS:
  MAILING ADDRESS:
  CITY AND ZIP CODE:
  BRANCH NAME:

  PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| | CASE MANAGEMENT STATEMENT | | CASE NUMBER: |
|---|---|---|---|
| (Check one): | ☐ UNLIMITED CASE<br>(Amount demanded<br>exceeds $25,000) | ☐ LIMITED CASE<br>(Amount demanded is $25,000<br>or less) | |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:                    Time:                    Dept.:                    Div.:                    Room:

Address of court *(if different from the address above)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐  This statement is submitted by party *(name):*
   b. ☐  This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.  The complaint was filed on *(date):*
   b. ☐  The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
      (1) ☐  have not been served *(specify names and explain why not):*

      (2) ☐  have been served but have not appeared and have not been dismissed *(specify names):*

      (3) ☐  have had a default entered against them *(specify names):*

   c. ☐  The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a.  Type of case in ☐ complaint    ☐ cross-complaint    *(describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Page 1 of 4
Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.    Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request    ☐ a jury trial    ☐ a nonjury trial    *(if more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
    a.  ☐ The trial has been set for *(date):*
    b.  ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

    c.    Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
    a.  ☐ days *(specify number):*
    b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial    ☐ by the attorney or party listed in the caption    ☐ by the following:
    a.    Attorney:
    b.    Firm:
    c.    Address:
    d.    Telephone number:
    e.    Fax number:
    f.    E-mail address:
    g.    Party represented:
    ☐ Additional representation is described in Attachment 8.

9.  **Preference**
    ☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
    a.    Counsel  ☐ has  ☐ has not    provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
    b.  ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
    c.  ☐ The case has gone to an ADR process *(indicate status):*

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.  The party or parties are willing to participate in *(check all that apply):*
    (1) ☐ Mediation
    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
    (4) ☐ Binding judicial arbitration
    (5) ☐ Binding private arbitration
    (6) ☐ Neutral case evaluation
    (7) ☐ Other *(specify):*

  e.  ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.
  f.  ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
  g.  ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**
  ☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**
  a.  ☐ Insurance carrier, if any, for party filing this statement *(name):*
  b.  Reservation of rights: ☐ Yes ☐ No
  c.  ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**
Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
  ☐ Bankruptcy ☐ Other *(specify):*
Status:

**14. Related cases, consolidation, and coordination**
  a.  ☐ There are companion, underlying, or related cases.
    (1) Name of case:
    (2) Name of court:
    (3) Case number:
    (4) Status:
    ☐ Additional cases are described in Attachment 14a.
  b.  ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**15. Bifurcation**
  ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**
  ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

---

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic Litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**

Previous case management orders in this case are *(check one)*:   ☐ none   ☐ attached as Attachment 21.

**22.** Total number of pages attached *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: _____

| _____ | ▶ | _____ |
|---|---|---|
| (TYPE OR PRINT NAME) | | (SIGNATURE OF PARTY OR ATTORNEY) |

| _____ | ▶ | _____ |
|---|---|---|
| (TYPE OR PRINT NAME) | | (SIGNATURE OF PARTY OR ATTORNEY) |

☐ Additional signatures are attached

# NOTICE

## SONOMA COUNTY SUPERIOR COURT
## CIVIL DIVISION PRO TEM JUDGE PROGRAM

This is to advise that the Civil Division's Pro Tem Judge Program is available to those civil litigants who wish to expedite trial by stipulating to the use of an attorney to serve as Pro Tem Judge. The court maintains a Pro Tem Judge panel, which consists of attorneys sworn by the Court and willing to serve in this capacity. Parties may stipulate to a trial by a Pro Tem Judge of their choice and may inform the Court of such a stipulation by contacting Connie Origer, the Pro Tem Judge Program Coordinator, at (707) 521-6726.

The Program offers three primary benefits to litigants: (1) the date and location of trial can often be scheduled by stipulation of the parties; (2) the trial will take place on the agreed date for trial, thus eliminating the need to trail other cases, and; (3) the trial can be scheduled for full days on a 5 day per week basis, thus shortening the time to try the case. The Program is available for both jury and court trials.

For cases that are tried in 5 days or less (9:00 a.m. to 5:00 p.m., jury or non-jury), the Pro Tem Judge serves at no cost to the parties. For trials that exceed 5 days in length, the parties and the Pro Tem Judge are obliged to agree to a daily fee, not to exceed $1,200 per day, for each full or partial day of trial beginning with the 6th day of trial. Additionally, the Court will charge the parties $656.72 for each day of trial for the Clerk and Court Reporter. The Court discourages the use of overtime and will charge an additional cost of $123.14 for each hour or portion thereof exceeding 8 hours in any day. The parties are also responsible for the payment of jury fees as in any other civil case. Cases in which there are fee waivers are eligible for the Program.

The Court is enthusiastic about this Program and urges all counsel to discuss the availability of the Program and the feasibility of its use with opposing counsel. Counsel must also obtain permission from clients to participation in the Program. To participate in the Program, contact Ms. Origer as soon as possible to discuss trial dates. Ms. Origer will generate and mail all required stipulations and orders with respect to the Program. Parties may obtain additional information on this program by contacting Ms. Origer or by reviewing the court's website at www.sonomasuperiorcourt.com.

Plaintiff is ordered to serve this Notice on all parties and to certify by proof of service filed with the Court that such service has been accomplished within 60 days of the filing of the Complaint.

---

CV-41, Revised 1/1/08    **PETALUMA PRO TEM JUDGE PROGRAM NOTICE**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name & Address*): | *FOR COURT USE ONLY* |
|---|---|
| Telephone No.:                          FAX No.:<br><br>ATTORNEY FOR (Name):                          Bar No. | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA**<br>600 Administration Drive<br>Santa Rosa, CA 95403<br>Telephone: (707) 521-6500 | |
| PLAINTIFF(S)/PETITIONER(S): | |
| DEFENDANT(S)/RESPONDENT(S): | CASE NUMBER: |

## NOTICE OF SELECTION AS MEDIATOR IN COURT-CONNECTED MEDIATION
(Sonoma County Superior Court Local Rule 16)

**Name of Mediator Selected:** _____

    **PLEASE TAKE NOTICE** that the above-referenced matter is subject to Sonoma County Superior Court Local Rule 16 (Rules Applicable to Alternative Dispute Resolution (ADR)). The parties have selected you to serve as the mediator in this matter. Sonoma County Superior Court has a voluntary, market rate mediation program. All mediations conducted in cases covered by Local Rule 16 are court-connected mediations and are subject to the provisions of California Rules of Court, Rules 3.850 et seq. It is your obligation to familiarize yourself with Local Rule 16 and California Rules of Court, Rules 3.850 et seq. before the mediation. **PLEASE NOTE:** you are required to have the parties complete an Attendance Sheet for Court-Program Mediation of Civil Case (Alternative Dispute Resolution) (Judicial Council form ADR-107) in accordance with California Rules of Court Rule 3.860. The form is available at the web site of the California Courts www.courtinfo.ca.gov.

    If you <u>are not</u> a member of the Sonoma County Superior Court panel of mediators, in order to serve as mediator in this case, you must complete the acceptance below (see CRC Rule 3.851(a) (2)), sign it in the space provided, and file the completed Notice *with your original signature* with the Court not less than five days before commencement of the mediation. Please also provide a courtesy copy of the completed and signed Notice to the ADR Program Coordinator, 1450 Guerneville Road, Building G, Santa Rosa, California 95403 or by facsimile transmission to (707) 521-6756.

    If you are mediating a case referred to court-connected mediation during calendar year 2007, regardless of the date of the mediation, you are required to complete and return a Mediator's Questionnaire (Sonoma County Superior Court Local form CV-36) within five (5) days after completion or other termination of the mediation. The completed questionnaire may be mailed or faxed to ADR Program Coordinator at the above address or FAX number. The plaintiff should provide the Mediator's Questionnaire to you. The questionnaire is also available on the web site of the Sonoma County Superior Court www.sonomasuperiorcourt.com.

    If you have any questions regarding your selection or service as a mediator in this matter or about the Sonoma County Superior Court ADR Program, please feel free to contact the ADR Program Coordinator at (707) 561-6500 or ADR@sonomacourt.org.

### MEDIATOR'S ACCEPTANCE

I, _____ hereby agree to mediate the above-captioned matter subject to
       (print name)

the conditions stated in this notice.

Dated: _____        _____
                                                 (Mediator's Signature)