OFFICE OF THE GENERAL COUNSEL
CHRISTINE M. HUMPHRIES -- BAR NO. 152013
DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.
3501 Jamboree Road
Newport Beach, California 92660
Telephone: (949) 725-4850
Facsimile: (949) 725-0619

MICHAEL D. McSWEENEY -- BAR NO. 51072
ALISON P. BUCHANAN -- BAR NO. 215710
HOGE, FENTON, JONES & APPEL, INC.
Sixty South Market Street, Suite 1400
San Jose, California 95113-2396
Telephone: (408) 287-9501
Facsimile: (408) 287-2583

Attorneys for Defendants
DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.
and FCI LENDER SERVICES, INC., a
California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA -- SAN FRANCISCO DIVISION

HARRY DONALD FISHER

Plaintiff,

vs.

DOWNEY SAVINGS AND LOAN ASSOCIATION, a California corporation, EQUITY ONE FINANCIAL CORP., a California corporation, ERIK MEYERS, individually, FCI LENDER SERVICES, INC., a California corporation, and DOES 1 through 20, inclusive,

Defendants.

No. C 08-02144 EDL

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

The undersigned parties to the above-entitled action hereby submit this Joint Case Management Conference Statement and request that the Court adopt it as its Case Management Order in this action.

Plaintiff Harry Donald Fisher ("Plaintiff") is jointly represented by James Marley Barrett and Marvin Pederson. Defendants Downey Savings and Loan Association, F.A. ("Downey Savings") and Foreclosure Consultants Inc. ("FCI") are represented by Christine Humphries (of the Office of the General Counsel for Downey Savings) and Hoge, Fenton, Jones & Appel, Inc. Defendants Equity One Financial Corp. ("Equity One") and Erik Meyers ("Meyers") (or collectively the "Equity One Defendants") are collectively represented by Nielsen, Haley & Abbot, LLP.

## DESCRIPTION OF THE CASE

**1. Brief Description of Events Underlying the Action:**

***Plaintiff's Description of the Case*:**

The plaintiff in this action alleges that he is a 74 year old divorced man with certain health problems that required him to take pain medication through June 2005. Plaintiff is retired and lives on a fixed income of $2,379.94 a month. As of March 2005, plaintiff had a combined monthly mortgage obligation on the first trust deed and second trust deed against his Santa Rosa, Sonoma County home in the sum of $1,669.67. Beginning April 1, 2009 those payments, pursuant to an ARM first, were to increase to $2,036.57. In March 2005, plaintiff received a cold call at his home from defendant ERIK MEYERS of defendant EQUITY ONE FINANCIAL CORPORATION. MEYERS told FISHER that MEYERS could reduce his monthly payments by way of a one percent mortgage on his property and allowing him to take several thousand dollars of equity out of the house.

Plaintiff mailed defendant MEYERS documents verifying that he had total retirement and Social Security benefits of $2,379.94 per month. Defendant sent the loan package to plaintiff, who was in Anaheim with his grandchildren for a brief vacation, via a courier. The courier had plaintiff sign and notarize documents that MEYERS and/or another representative from EQUITY ONE FINANCIAL created. The loan application falsely stated plaintiff's monthly income to be $8,000.00 per month rather than plaintiff's actual income of $2,379.94. The papers that plaintiff signed were for a loan with negative amortization and exorbitant interest rate increases. Plaintiff contends that defendant DOWNEY SAVINGS AND LOAN ASSOCIATION was complacent in the fraud practiced upon plaintiff, and that all defendants participated in elder financial abuse. Plaintiff

contends that defendant DOWNEY SAVINGS AND LOAN ASSOCIATION knew or should have known that the $8,000.00 income figure with no documentation was false, and that defendant had the ability to verify plaintiff's income and credit through the simple expedient of verification, including but not limited to, with the Internal Revenue Service, but defendant failed to do that.

***Defendants' Description of the Case*:**

A. By Defendant Downey Savings and FCI:

Summary Statement: Plaintiff applied for and obtained from Downey Savings a refinance real estate loan. The essence of this case is: Plaintiff submitted a loan application that contained misrepresentations about his income and now apparently lacks the income to support the debt. Downey Savings would not have made the loan to Plaintiff if it had been aware of his true income.

Factual History: On April 8, 2005, Downey Savings received a loan application submitted through Plaintiff's mortgage loan broker, Equity One. Downey Savings does not have an agency relationship with Equity One or Meyers. The loan applied for was to be an adjustable rate refinance loan in the amount of $385,000. On April 11, 2005 Downey Savings mailed out initial disclosures pursuant to RESPA. Subsequently, the loan amount was changed to $400,000. As is typical with a loan that comes to Downey Savings through a mortgage loan broker, Downey Savings' file does not reflect any direct contact with Plaintiff during the loan origination process.

On April 23, 2005, Plaintiff executed loan documents in Orange County, California. Also on April 23, 2005, Plaintiff signed acknowledgments of receipt of a Notice of Right to Cancel (two copies), a Federal Truth-in-Lending Disclosure Statement and a Good Faith Estimate of Settlement Charges (which disclosed a broker rebate in the amount of $12,000 and settlement charges including a broker origination fee of $8,000). Plaintiff signed (and initialed each page of) a Uniform Residential Loan Application indicating his monthly income was $8,000 and represented the information therein was true and correct pursuant to 18 U.S.C. Section 1001 et seq. Plaintiff also signed an Addendum to Loan Application, which provides that all loan terms must be in writing and that no verbal promises are binding. Plaintiff also signed the Lender's Escrow Instructions, which disclosed the $12,000

broker rebate (just about an inch above his signature) as well as the $8,000 broker origination fee and closing costs for the loan. This loan did not close because the escrow company discovered there were insufficient funds to close. It appears there was an unanticipated prepayment penalty on one of Plaintiff's existing liens.

Thereafter, Downey Savings received a new loan application submitted through Plaintiff's mortgage loan broker, Equity One, for an adjustable rate refinance loan in the amount of $416,000. On May 17, 2005, in connection with this new loan application, Downey Savings mailed out initial disclosures pursuant to RESPA.

On May 25, 2005, Plaintiff executed loan documents in Sonoma County, California. Also on May 25, 2005, Plaintiff signed an acknowledgment of receipt of a Notice of Right to Cancel (two copies), a Federal Truth-in-Lending Disclosure Statement and a Good Faith Estimate of Settlement Charges (which disclosed a broker rebate in the amount of $12,480 and settlement charges including a broker origination fee of $7,999.68). Plaintiff signed (and initialed each page of) a Uniform Residential Loan Application indicating his monthly income was $8,000 and represented the information therein was true and correct pursuant to 18 U.S.C. Section 1001 et seq. Plaintiff also signed an Addendum to Loan Application which provides that all loan terms must be in writing and that no verbal promises are binding. Plaintiff also signed the Lender's Escrow Instructions which disclosed the $12,480 broker rebate (just about an inch above his signature) as well as the $7,999.68 broker origination fee and closing costs for the loan. Downey Savings did not receive a cancellation of this loan and escrow closed on June 3, 2005.

Following the loan closing, Plaintiff failed to make the payments when due. Downey Savings retained FCI as its foreclosure agent. FCI properly recorded and mailed the Notice of Default. The default on the loan was not cured and FCI properly recorded, mailed and posted the Notice of Sale. This action was filed first in state court and the state court issued a TRO preventing the sale from proceeding. Following removal this Court also issued a TRO regarding the foreclosure sale and Plaintiff's Motion for a Preliminary Injunction is set for hearing on September 16, 2008. There are no allegations against FCI distinguished from those against Downey Savings.

Downey Savings asserts that the parol evidence rule bars Plaintiff's claims that the loan terms are not as set forth in the loan documents, but rather are those he alleges he was promised by the Equity One Defendants; loan terms that directly contradict the terms in the integrated loan documents. Downey Savings asserts that it has no responsibility for the alleged actions of the Equity One Defendants and is not bound by the alleged statements made by them. Downey Savings asserts that the proper disclosures were made by it. Downey Savings asserts that broker rebates are lawful forms of broker compensation. Downey Savings asserts that the broker origination fee and rebate were disclosed to Plaintiff. Downey Savings asserts that it had no duty to Plaintiff to inquire of him whether everything on his loan application was true, including his express representation that everything was true, and specifically that it had no duty to verify the income Plaintiff represented on his loan application.

By Equity One Defendants:

Before dealing with Equity One in 2005, Mr. Fisher had been continuously refinancing with other parties to strip the equity from his residence every year since 2001, as the value of the property rose. The number of refinances in that time frame show that he knew exactly what he was doing and that he was never bamboozled into signing up for another refinancing.

Mr. Fisher's credit report shows that in 1999 he had a $125,000 mortgage on the property. In 2001 to took out a home equity loan in the amount of $53,000 to increase his indebtedness to about $178,000. In 2002, he refinanced to retire both those obligations and to replace them with a first mortgage of $235,000, and thereby took tens of thousands of dollars more out of his house.

In 2003, Mr. Fisher took out another home equity loan in the amount of $58,500, thereby increasing his indebtedness to about $293,500. The next year, in February 2004, he refinanced again, retiring both of the existing loans and replacing them with a first mortgage in the amount of $320,000, and thereby taking still more cash out of the property. Eight months later, in October 2004, he took out a home equity loan for $80,500, bringing his total indebtedness to about $400,500.

In 2005, working with Equity One, Mr. Fisher repeated the now-familiar pattern one more time. For the third time in four years he refinanced to pay off both the existing first and (home equity) second loans with an ever-larger first loan, now in the amount of $416,000. He then followed that by opening yet another home equity line of credit and immediately withdrew $25,000. He now claims, however, that this time around he was somehow bamboozled into signing up for a loan that he neither understood nor could afford.

The Equity One Defendants contend that the loan they brokered for Mr. Fisher from Downey Savings was an “income stated,” “no documentation” loan for which verification of the income amount stated by the applicant would not be sought. The Equity One defendants further contend that Mr. Fisher submitted to them in connection with the loans a bank statement showing deposits into his checking account in excess of $6,000 a month, which made the income amount he stated to Equity One -- $8,000 a month – appear entirely feasible. The Equity One defendants contend that all required disclosures were made to Mr. Fisher and that all material terms of the loan were explained to him.

**2. <u>Principle Factual Issues in Dispute</u>:**

a. Whether plaintiff or defendants ERIK MEYERS and EQUITY ONE FINANCIAL CORPORATION inserted the false $8,000.00 figure on the loan application without plaintiff’s knowledge or authority.

b. Whether defendants ERIK MEYERS and EQUITY ONE FINANCIAL CORPORATION breached their fiduciary duty to their client, plaintiff HARRY DONALD FISHER.

c. Whether defendant DOWNEY SAVINGS AND LOAN ASSOCIATION’s underwriters knew or should have known that the $8,000.00 income figure was falsely stated.

d. Whether all defendants should have participated in the transaction wherein a 74-year old man was sold a loan that was disadvantageous and excessively expensive.

e. Whether the facts of this case constitute a violation of California’s Elder Financial Abuse laws.

f. Whether collection of $20,000.00 in fees from the plaintiff and bonuses to the broker that are charged to the plaintiff constitute a fraud on the plaintiff and an excessive fee for the services and benefits provided.

g. Whether defendants violated Code of Federal Regulations §226.34(a)(4).

h. Whether defendants violated California Financial Code §50701.

i. Whether defendants violated California Business and Professions Code §17500.

j. Whether defendants properly disclosed the annual percentage rate of interest on principal, the amount of the finance charge, the amounts financed, the total payments, the payments schedule, and the disclosures and limitations referred to in CFR §§ 226.32(c) and (d) as required by the Truth in Lending Act.Whether Plaintiff has facts to support a fraud claim against Downey Savings since there are no allegations of communications between Plaintiff and Downey Savings prior to and including the date of the execution of the loan documents;

k. Whether the facts of this loan meet the requirements of 12 CFR 226.32 in order for Plaintiff to maintain his First Cause of Action under 12 CFR 226.34.

l. What TILA disclosures Plaintiff claims he did not receive or the specific claimed inaccuracies in the TILA disclosures;

m. Whether Plaintiff acknowledged and accepted the disclosure of the $12,480 broker rebate and $7,999.66 broker origination fee set forth on the Lender’s Closing Instructions and the Good Faith Estimate of Settlement Charges and whether Plaintiff has any admissible evidence that Downey Savings knew that Equity One allegedly did not earn these sums;

n. Whether Plaintiff has any admissible evidence to support his allegation of an agency relationship between Downey Savings and the Equity One Defendants;

o. Whether Plaintiff has any admissible evidence to support his allegation of a conspiracy between Downey Savings and the Equity One Defendants;

p. Whether Plaintiff has any admissible evidence to support his allegation of a fiduciary relationship between himself and Downey Savings;

q. Whether Plaintiff has unclean hands;

r. Whether Plaintiff's own conduct was the substantial factor in creating the situation where he lacked the income to support the debt;

s. Whether Plaintiff is responsible for the accuracy of the loan application that he represented was true and correct;

t. Whether Plaintiff has any admissible evidence to support a deceptive advertising claim against Downey Savings under California Business and Professions Code Section 17500; and

u. Whether Plaintiff has any admissible evidence to support an unfair competition claim against Downey Savings under California Business and Professions Code Section 17200

**3. <u>Principle Legal Issues In Dispute</u>:**

a. Whether defendant DOWNEY SAVINGS is under a duty to verify information in a loan package executed by a person over the age of 65.

b. Whether "no-documentation" loans give rise to a presumption that a lender assumes the risk of a broker's fraud in preparation of a borrower's loan package.

c. Whether defendant EQUITY ONE FINANCIAL CORPORATION acted as the agent or employee of defendant DOWNEY SAVINGS.

d. Whether Plaintiff is bound by the loan documents that bear his signature;

e. Whether Plaintiff's claims are barred by the parol evidence rule;

f. Whether Plaintiff's claims are barred by the statute of frauds;

g. Whether the loan documents were integrated;

h. Whether yield spread premiums ("YSPs" or broker rebates) are an established lawful practice (<u>Byars v. SCME Mortgage Bankers, Inc.</u> (2003) 109 Cal. App.4th 1134; <u>Bjustrum v. Trust One Mortgage Corp.</u>, 322 F.3d 1201 (9th Cir. 2003); <u>Schuetz v. Banc One Mortgage Corp.</u>, 292 F.3d 1004 (9th Cir. 2002));

i. Whether Plaintiff is responsible for the accuracy of the information within the loan applications that he signed and represented were true and correct;

j. Whether Plaintiff is bound by the Addendum to the Residential Loan Application, which provides that all loan terms must be in writing and that no verbal promises by anyone are binding;

k. Whether the Wholesale Loan Brokerage Agreement's provision that there is no agency relationship between Downey Savings and Equity One (with the exception of obtaining an appraisal) establishes that there was no agency relationship;

l. Whether Downey Savings had a duty to Plaintiff to scrutinize Plaintiff's loan application (which he certified was true) and ask him if he had allowed it to be submitted with false information on it;

m. Whether Plaintiff is in default under Section 8 of the Deed of Trust; and

n. Whether the California Business and Professions Code Sections 17200 and 17500 claims are preempted.

**4. Other Factual Issues Which Remain Unresolved for Reasons Stated Below and How the Parties Propose to Resolve Those Issues:**

Downey Savings and FCI anticipate filing a motion for summary judgment/adjudication.

**5. Parties Which Have Not Been Served and the Reason:**

Before the August 5, 2008 Case Management Conference, Downey Savings plans to file a cross-claim against Equity One pursuant to the Wholesale Loan Brokerage Agreement between them. The parties are presently unaware of any other unserved parties.

**6. Additional Parties that the Below-Specified Parties Intend to Join and Intended Time Frame for Such Joinder:**

None anticipated at this time.

## CONSENT TO MAGISTRATE JUDGE

**7. The Following Parties Consent To Assignment of This Case To A Magistrate for Trial:**

The undersigned parties have already consented to the current assignment to Magistrate Elizabeth D. LaPorte in connection with the June 2008 ex parte application brought by Plaintiff in June 2008.

///

///

///

## ALTERNATIVE DISPUTE RESOLUTION

**8. <u>The Parties have Filed a Stipulation and Proposed Order Selecting an ADR Process</u>:**

The parties stipulate to an ENE. On July 21, 2008, the Court ordered that the ENE occur within 90 days. On July 29, 2008, the ENE Evaluator set a telephone conference for August 19, 2008.

**9. <u>Additional Information Regarding ADR Process or Deadlines</u>:**

None.

## DISCLOSURES

**10. <u>The Parties Certify that They Have Made the Following Disclosures</u>:**

Pursuant to the Court's Order Setting Initial Case Management Conference, issued on April 24, 2008, the undersigned parties served their FRCP Rule 26(a) initial disclosures on July 29, 2008 by U.S. Mail.

## DISCOVERY & MOTIONS

**11. <u>The Parties Agree to the Following Discovery Plan</u>:**

The undersigned parties agree to the following discovery plan:

a. To use default discovery limitations, if any, provided in the Federal Rules of Civil Procedure as they relate to each available discovery device.

b. Non-expert discovery is to be completed by the end of the business day on the sixtieth (60th) day before the scheduled trial date. Accordingly, no discovery responses can be due after such time. Expert discovery shall be completed thirty (30) days before the scheduled trial date.

c. The parties reserve the right to, and may petition the Court for permission to conduct additional or extraordinary discovery consistent with the standards and limitations within the applicable Federal Rule of Civil Procedure. On July 2, 2008, this Court entered an order with respect to the parties' stipulation to limited early discovery.

d. A stipulated protective order has been entered.

e. Dispositive motions shall be heard at least 90 days before the pretrial conference date.

## TRIAL SCHEDULE

**12. The Parties Request a Trial Date as Follows:**

The undersigned parties agree to a trial date in April 2009. Plaintiff requests a trial by jury.

**13. The Parties Expect the Trial Will Last for the Following Number of Days:**

The undersigned parties estimate that the jury trial in this matter will require four (4) to five (5) court days to complete.

DATED: July 29, 2008

ATTORNEY AT LAW

By: /s/ James Marley Barrett
James Marley Barrett,
Attorneys for Plaintiff, Harry Donald Fisher

DATED: July 29, 2008

NIELSEN, HALEY & ABBOTT, LLP

By: /s/ Stephen Walter Cusick
Stephen Walter Cusick,
Attorneys for Defendant,
Equity One Financial Corp., a California corporation

DATED: July 29, 2008

OFFICE OF THE GENERAL COUNSEL

By: /s/ Christine M. Humphries
Christine M. Humphries
Attorneys for Defendants,
Downey Savings and Loan Association, F.A. and FCI Lender Services, Inc.

## CERTIFICATE OF SERVICE

I, the undersigned, am over the age of 18 and not a party to the above-entitled action. I am a citizen of the United States, employed in the County of Orange, State of California. My business address is:

Downey Savings and Loan Association, F.A.
3501 Jamboree Road
Newport Beach, CA 92660

On the date and from the location listed below, I caused the following document(s), the original of which was produced on recycled paper, to be served in the following manner:

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

☒ **E-MAIL -** By electronic mail or as follows:

**Through the Court's CM/ECF filing system pursuant to Local Rule 5.5(b).**

☒ **BY MAIL**: By placing a true and correct copy thereof enclosed in a sealed envelope addressed as above, with postage thereon fully prepaid in the U.S. Mail at Newport Beach, California. I am readily familiar with the Bank's practice of collection and processing of correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Newport Beach, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing as stated in the affidavit.

☐ **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to FEDERAL EXPRESS for delivery to the above address(es).

Service was directed to:

**SEE ATTACHED SERVICE LIST**

I declare under penalty of perjury under the laws of the Untied States that the foregoing is true and correct.

Executed on July 29, 2008, at Newport Beach, California

/s/
Jessica A. Vasquez

## SERVICE LIST

| | |
|---|---|
| James Marley Barrett<br>Attorney at Law<br>150 E. Cotati Avenue<br>Cotati, CA 94931 | **ATTORNEY FOR PLAINTIFF:**<br>***Harry Donald Fisher***<br><br>**Via U.S. Mail** |
| Marvin Pederson<br>Attorney at Law<br>1160 North Dutton Avenue , Suite 150<br>Santa Rosa, CA 95401<br>pederson@marvlaw.com | **ATTORNEY FOR PLAINTIFF:**<br>***Harry Donald Fisher***<br><br>**Via E-Mail** |
| Stephen Walter Cusick<br>Hillary Clare Agnost<br>Nielsen, Haley & Abbot, LLP<br>44 Montgomery Street, Suite 750<br>San Francisco, CA 94104<br>scusick@nielsenhaley.com<br>hagnost@nielsenhaley.com | **ATTORNEYS FOR DEFENDANTS:**<br>***Equity One Financial Corp. and Eric Myers***<br><br>**Via E-Mail** |
| Michael D. McSweeney<br>Alison P. Buchanan<br>HOGE, FENTON, JONES & APPEL, INC.<br>Sixty South Market Street, Suite 1400<br>San Jose, California 95113-2396<br>mdm@hogefenton.com<br>apb@hogefenton.com | **ATTORNEYS FOR DEFENDANTS:**<br>***Downey Savings and Loan Association, F.A and FCI Lender Services, Inc. a California corporation***<br><br>**Via E-Mail** |